**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, a limited liability corporation, | ) ) ) | **Case No. 13 Civ. 3777 (AKH)** |
| Plaintiff, | ) ) ) | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OMNIBUS MOTION TO COMPEL** |
| v. | ) ) ) | **ECF Case** |
| JP Morgan Chase & Co. et al, | ) ) | |
| Defendants. | ) ) ) | |

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................ 2

        A.      JPMC's Interrogatories to IV ................................................... 2

        B.      IV's Document Privilege Log ................................................... 3

III.    IV SHOULD BE COMPELLED TO PROVIDE COMPLETE,
        SUBSTANTIVE RESPONSES TO JPMC'S INTERROGATORY NOS. 4,6
        AND 14 ................................................................................................ 4

        A.      Legal Standard ......................................................................... 4

        B.      Argument .................................................................................. 5

                1.      IV Should Be Compelled to Answer JPMC's Interrogatory
                        Relating to Alleged Improvements over the Prior Art ............... 6

                2.      IV Should Be Compelled to Answer JPMC's Interrogatory
                        Relating to Calculating Alleged Damages .................................. 8

                3.      IV Should Be Compelled to Answer JPMC's Interrogatories
                        Relating to Alleged Validity ..................................................... 10

IV.     IV SHOULD BE ORDERED TO PRODUCE DOCUMENTS THAT IT HAS
        WITHHELD UNDER IMPROPER CLAIMS OF PRIVILEGE ............................. 12

        A.      IV Is Improperly Withholding Documents Relating to the Patents-In-Suit
                That Were Created Prior to Acquisition of the Patents ......................... 12

        B.      IV Is Improperly Withholding Documents That Were Shared With Third
                Parties ..................................................................................... 15

        C.      IV Is Improperly Withholding Documents Created by Outside Evaluators
                and Contractors ........................................................................ 16

                1.      IV Has Failed to Meet Its Burden of Proving That These
                        Documents Satisfy The Elements of The Attorney-Client Privilege
                        Or Attorney Work Product Doctrine .......................................... 16

                2.      Outside Evaluators and Contractors Are Not Privileged Persons or
                        Agents .................................................................................. 18

V.      CONCLUSION ................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

<b><u>Page(s)</u></b>

**Cases**

*Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Trust*,
  956 F. Supp. 2d 429 (S.D.N.Y. 2013)
  *aff'd*, No. 2013-1545, 2014 WL 4100584 (Fed. Cir. Aug. 21, 2014)........................................ 8

*Bowne of New York City, Inc. v. AmBase Corp.*,
  150 F.R.D. 465 (S.D.N.Y. 1993)........................................ 17

*Burns v. Imagine Films*,
  164 F.R.D. 589 (W.D.N.Y. 1996)........................................ 17

*Convolve, Inc. v. Compaq Computer Corp.*,
  223 F.R.D. 162 (S.D.N.Y. 2004)........................................ 5, 9

*Cuno, Inc. v. Pall Corp.*,
  121 F.R.D. 198 (E.D.N.Y. 1988)........................................ 15

*Diagnostics Sys. Corp. v. Symantec*,
  2008 WL 93963876 (C.D. Cal. Aug. 12, 2008)........................................ 13, 14

*Dot Com Entm't Grp., Inc. v. Cyberbingo Corp.*,
  237 F.R.D. 43 (W.D.N.Y. 2006)........................................ 5

*Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*,
  No. 1:05-CV-01411-OWW-GSA, 2010 WL 716306, (E.D. Cal. Mar. 2, 2010)........................................ 12

*Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*,
  232 F.R.D. 103 (S.D.N.Y. 2005)........................................ 18, 19, 20

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970)........................................ 7

*In re Adelphia Communs. Corp.*,
  No. 02-41729 (REG), 2007 WL 601452 (S.D.N.Y. Feb. 20, 2007)........................................ 20

*In re Copper Mkt. Antitrust Litig.*,
  200 F.R.D. 213 (S.D.N.Y. 2001)........................................ 19

*In re County of Erie*
  473 F.3d 418 (2d Cir. 2007)........................................ 13

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007)........................................ 7

*Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*,
  248 F.R.D. 126 (S.D.N.Y. 2007)........................................ 8

*Layne Christensen Co. v. Purolite Co.*,
  No. 09-CV-2381-JWL, 2011 WL 231400, (D. Kan. Jan. 24, 2011)........................................ 11

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Life Music, Inc. v. Broadcast Music, Inc.*,
  41 F.R.D. 16 (S.D.N.Y. 1966)..............................................................................4

*LifeNet Health v. LifeCell Corp.*,
  No. 2:13-CV-486, 2014 WL 4162113 (E.D. Va. Aug. 19, 2014) ......................5, 11

*Minks v. Polaris Industries, Inc.*,
  546 F.3d 1364 (Fed. Cir. 2008)...........................................................................7

*Polycast Tech. Corp. v. Uniroyal, Inc.*,
  WL 138968 (S.D.N.Y., Sept. 20, 1990) ..............................................................16

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
  306 F.3d 99 (2d Cir. 2002).................................................................................8

*S.E.C. v. Beacon Hill Asset Mgmt. LLC*,
  231 F.R.D. 134 (S.D.N.Y. 2004).......................................................................18

*Steinfeld v. IMS Health Inc.*,
  No. 10 Civ 3301 (CS) (PED), 2011 WL 6179505 (S.D.N.Y. Dec. 9, 2011) ............20

*U.S. v. Adlman*,
  134 F.3d 1194 (2d Cir. 1998)............................................................................16

*U.S. v. Davis*,
  132 F.R.D. 12 (S.D.N.Y. 1990)..........................................................................14

*United States v. Jacobs*,
  117 F.3d 82 (2d Cir. 1997)................................................................................15

*United States v. Mejia*,
  655 F.3d 126 (2d Cir. 2011)..............................................................................13

*W. Union Co. v. MoneyGram Payment Sys., Inc.*,
  626 F.3d 1361 (Fed. Cir. 2010)...........................................................................7

*William F. Shea, LLC v. Bonutti Research, Inc.*,
  WL 1499609 (S.D. Ohio Apr. 11, 2013).............................................................13

*Woods v. DeAngelo Marine Exhaust, Inc.*,
  692 F.3d 1272 (Fed. Cir. 2012)...........................................................................5

**Rules**

Fed. R. Civ. P. 26(b)(3)...........................................................................................16

Fed. R. Civ. P. 33(b)(3).............................................................................................4

Fed. R. Civ. P. 37(a)(4).............................................................................................4

S.D.N.Y. Local Civil Rule 33.3(a).........................................................................5, 9

# I.      INTRODUCTION

Pursuant to Rules 37(a)(1) and 34(a) of the Federal Rules of Civil Procedure, Defendants J.P. Morgan Chase & Co., JPMorgan Chase Bank, National Association, and Chase Bank USA, National Association (collectively "JPMC") seek an order compelling Plaintiff Intellectual Ventures II LLC ("IV") to supplement its deficient interrogatory responses.  JPMC also seeks an order compelling IV to produce the following documents improperly listed on IV's privilege log: (1) documents relating to the patents-in-suit that were created before IV acquired the patents; (2) documents that were shared with third parties; and (3) documents created by or shared with outside analysts and evaluators.

Regarding interrogatory responses, JPMC served on IV contention interrogatories designed to determine IV's position on fundamental issues in this case: how the patents-in-suit improved upon the prior art (Interrogatory No. 4), the categories and amount of damages that IV expects to seek from JPMC (Interrogatory No. 6), and why the patents-in-suit are not invalid (Interrogatory No. 14).  IV does not dispute that it will contend that the patents-in-suit are valid and improved upon the prior art, and that it will seek damages from JPMC, and accordingly, JPMC simply seeks the factual bases for such contentions and claims.  Yet IV only provides broad, general answers with no substantive information regarding IV's contentions.  As a result, at the close of written discovery, JPMC has no information regarding IV's contentions on these critical issues.  IV's failure to comply with its discovery obligations frustrates JPMC's ability to prepare for depositions.

Regarding IV's privilege log, IV is attempting to evade its discovery obligations by withholding relevant documents through inapplicable assertions of attorney-client privilege and work product doctrine.  IV claims privilege over documents containing analyses of the patents-in-suit that were created prior to IV's acquisition of those patents.  These documents, however,

were drafted to further IV's *business* interests—not legal interests—as IV was considering purchase of the patents-in-suit as part of its core business function of patent aggregation. These documents cannot be withheld from disclosure on the basis of privilege.

IV is also withholding documents that were voluntarily shared with third parties. Any claim of attorney-client privilege that once attached to these documents has been waived.

Finally, IV has also claimed attorney-client privilege and/or attorney work product protection over documents that were either created by or sent to external analysts or evaluators. IV, however, has not provided any basis for extending such privileges to these third-party analysts or evaluators.

## II.     FACTUAL BACKGROUND

### A.     JPMC's Interrogatories to IV

On August 19, 2014, JPMC served its Revised First Set of Interrogatories seeking to understand IV's contentions on fundamental issues in this case, such as which specific products IV is accusing of infringement, the circumstances regarding the alleged conception and reduction to practice of the claimed inventions in the patents-in-suit, and information concerning IV's alleged damages. In response, IV supplied boilerplate objections and failed to provide a meaningful answer to many of JPMC's interrogatories. On September 24, 2014, JPMC identified a number of significant deficiencies and requested that IV amend its responses. Ex. A, 9/24/2014 Letter from M. New to E. Day. The parties met and conferred on September 26, and at that time, IV notified JPMC that, although it will supplement certain of its interrogatory responses, it would not supplement its answers to Interrogatory Nos. 4, 6 and 14. IV later confirmed its position by email. Ex. B, 9/28/2014 Email from E. Day to M. New. JPMC therefore requests that the Court order IV to provide a complete and immediate response to JPMC's Interrogatory Nos. 4, 6, and 14.

**B.**     **IV's Document Privilege Log**[1]

On September 15, 2014, IV produced a privilege log[2] containing documents IV admits are relevant to this case, but that IV will not produce because it claims the documents are protected by privilege. *See* Ex. C.   Many of IV's claims of privilege are inapplicable, as pointed out by JPMC in a letter dated September 23, 2014:

1.      Documents related to the patents-in-suit that were created before IV acquired them.  *See* Ex. C, at DocId Nos. 907, 917, 937, 1062, 1079, 1083, 1197.

2.      Documents created by/sent to third parties.  *See* Ex. C, at DocId Nos. 952, 1244.

3.      Documents created by or shared with outside analysts/evaluators.  *See* Ex. C, at DocId Nos. 299, 301, 342, 377, 406, 433, 481, 917, 974, 983, 1079, 1083, 1014, 1154, 1185, 1197, 1444, 1445, 1625, 1626, 1716, 4070, 13451, 13452, 13516, 13589, 13600, 13602, 13605, 13625, 13629, 13632, 13633, 13636, 13706, 13708, 13709, 13712.

Ex. D, 09/23/2014 Letter from M. New to E. Day.

Along with its identification of improperly-logged documents, JPMC asked IV to identify the attorneys and clients involved in their creation, and the purpose for which the documents were created, including any actual or anticipated litigation. *Id.*  IV did not provide the requested information, and confirmed during the parties' meet-and-confer on September 26, that it would

---

[1]  IV has produced two privilege logs in this case: one relating to non-email documents, and one relating to emails.  While IV's final non-email privilege log was produced on September 15, IV's final email privilege log was not produced until September 26 (only 4 days before the close of document discovery).   That email privilege log is 146 pages and includes approximately 3,000 entries.  As such, JPMC has not had sufficient opportunity to review IV's email privilege log prior to the close of document discovery,  Accordingly, this Motion addresses only IV's document privilege log, and to the extent that an additional motion directed at IV's email privilege log is necessary, JPMC will file that motion with the Court no later than October 7.

[2]  For each document listed on IV's privilege log, IV identifies the corresponding Request for Production from JPMC's First Set of Requests for Production that the particular document is responsive to, confirming that the documents are relevant to this case. *See* Ex C.

not be producing the improperly-withheld documents.  JPMC therefore has no choice but to move the Court to compel IV to produce these relevant and non-privileged documents.[3]

## III.  IV SHOULD BE COMPELLED TO PROVIDE COMPLETE, SUBSTANTIVE RESPONSES TO JPMC'S INTERROGATORY NOS. 4,6 AND 14

IV's responses to Interrogatory Nos. 4, 6, and 14, which seek IV's contentions on fundamental issues in this case and the factual bases thereof, are inadequate and fail to provide any meaningful or responsive information.  JPMC requires this information to understand IV's theories on liability and damages so that it may adequately prepare for depositions and expert discovery.

### A.  Legal Standard

The Federal Rules require that a party responding to an interrogatory "must, to the extent it is not objected to, be answered separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).  The Federal Rules of Civil Procedure provide that "an evasive, or incomplete disclosure, answer or response is to be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  Likewise, Federal Rule 37(a)(3)(B) provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if a party fails to answer an interrogatory submitted under Rule 33."

Interrogatories are designed "to obtain a party's admissions and contentions under oath and to narrow the issues in the case." *Life Music, Inc. v. Broadcast Music, Inc.*, 41 F.R.D. 16, 26

---

[3]  During the parties' October 3, 2013 Status Conference with the Court, the Court stated that if there is a discovery issue, the parties can raise the dispute with the Court in one of two ways: (1) either the "regular way, under Rule 37" or pursuant to the Court's Individual Rules under Rule 2(E) by writing a joint letter to the Court.  Dkt. No. 48, at 4 (Transcript of Proceedings re: Conference held on 10/3/2013 before Judge Alvin K. Hellerstein).  As set forth in the Court's August 21, 2014 Scheduling Order, the parties are to complete document production by September 30, 2014.  Dkt. No. 168, at 1 (Scheduling Order).  As the parties move past this date and quickly approach scheduled depositions, JPMC believes the filing of this motion under Rule 37 is the most expeditious method to resolve this discovery dispute.

(S.D.N.Y. 1966).   Recognizing the value of contention-based interrogatories, this District's Local Rule 33.3(a) allows interrogatories concerning "the computation of each category of damages alleged" as early as "the commencement of discovery."   S.D.N.Y. Local Civil Rule 33.3(a).   Consistent with this Rule, courts in this District have compelled patentees to describe through an interrogatory response its alleged patent damages, including the categories of damages sought, methodologies for calculating them, and the types of evidence upon which the calculations were based.   *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 174 (S.D.N.Y. 2004) (compelling plaintiff to set forth the amount of damages attributable to each category of damages, the methodology and calculations for arriving at those figures, and a general identification of evidence that support those calculations).   Likewise, courts frequently order patentees to answer a defendant's interrogatories responding to a defendant's allegations of invalidity and differences over the prior art.   *See, e.g., Dot Com Entm't Grp., Inc. v. Cyberbingo Corp.*, 237 F.R.D. 43, 44–46 (W.D.N.Y. 2006) (compelling response to contention interrogatory regarding the basis for the defendant's assertion that the plaintiff's patent was invalid based on prior art and obviousness); *see also LifeNet Health v. LifeCell Corp*., No. 2:13-CV-486, 2014 WL 4162113, at *6 (E.D. Va. Aug. 19, 2014) (ordering plaintiff to respond to defendant's invalidity contention interrogatory).

### B.    Argument

In addition to being entitled to IV's complete responses to JPMC's interrogatories under the Federal Rules, disclosure of IV's positions on liability and damages-related issues at this stage in discovery is required by the Court's Scheduling Order, Dkt. No. 168, and will streamline the remainder of discovery.   It will allow JPMC to understand IV's contentions before conducting depositions, will enable JPMC to identify the correct people to depose, and will focus the depositions on the most relevant issues.   *See Woods v. DeAngelo Marine Exhaust, Inc.*, 692

F.3d 1272, 1280 (Fed. Cir. 2012) ("Contention interrogatories—like the interrogatory here—serve an important purpose in helping to discover facts supporting the theories of the parties. Answers to contention interrogatories also serve to narrow and sharpen the issues thereby confining discovery and simplifying trial preparation.").   Ordering IV to supplement its interrogatory responses at this point in the case will also allow JPMC's experts to start analyzing IV's positions in order to prepare their reports on invalidity and damages.   JPMC should not be required to wait until IV serves its opening expert reports to discover IV's positions—indeed, that is the very purpose of contention interrogatories.

> **1.    IV Should Be Compelled to Answer JPMC's Interrogatory Relating to Alleged Improvements over the Prior Art**

JPMC served Interrogatory No. 4 seeking to understand IV's contentions regarding alleged improvements over the prior art:

**INTERROGATORY NO. 4**

Identify and describe in detail all the manners or techniques by which each asserted claim of the Patents improved upon the prior art, added functionality that did not exist in the prior art, or provided a variation on or upgrade of the prior art, and for each such claimed improvement, added functionality, or variation or upgrade, state whether you contend that it was a non-obvious or unpredictable improvement, addition of functionality, variation or upgrade and why.

Ex. E, at 7–8.  IV's response, however, is deficient:

**RESPONSE TO INTERROGATORY NO. 4**

IV responds as follows:

> For the '666 patent: *see*, *e.g.*, 1:6-10:62 and Figs. 1-8.
> For the '574 patent: *see*, *e.g.*, 1:10-18:15 and Figs 1-28.
> For the '409 patent: *see*, *e.g.*, 1:9-35:32 and Figs 1-24.
> For the '694 patent: *see*, *e.g.*, Abstract, 1:11- 6:45 and Figs. 1-3.
> For the '084 patent: *see*, *e.g.*, Abstract, 3:24- 14:57 and Figs. 2-5.

Ex. E, at 8.  IV's answer to Interrogatory No. 4 merely cites to the **entirety** of the specifications and Figures of the patents-in-suit and nothing else, without explanation or analysis, and therefore amounts to a non-answer.

The information requested by this Interrogatory is relevant to several important issues in this case, including whether the claims are directed to patentable subject matter under 35 U.S.C. § 101 ("Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title"), and the alleged novelty of the patents-in-suit over the prior art. *See W. Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1372 (Fed. Cir. 2010) (concluding that the asserted dependent claims, which "add[ed] only trivial improvements that would have been a matter of common sense to one of ordinary skill in the art," were obvious as a matter of law); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007) (when evaluating obviousness "a court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions.").

The alleged improvements over the prior art provided by the claimed inventions is also one of the *Georgia-Pacific* factors courts consider when calculating a reasonable royalty for patent damages.  *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (Factor No. 9: "The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results."); *see also Minks v. Polaris Industries, Inc.,* 546 F.3d 1364, 1372 (Fed. Cir. 2008) ("A determination of the royalty stemming from a hypothetical negotiation is often made by assessing factors such as those set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*").

7

IV should be compelled to supplement its answers to this interrogatory immediately. JPMC intends to move for summary judgment that certain claims of the patents-in-suit are invalid under Section 101, and IV's response to this interrogatory would assist this Court in deciding JPMC's dispositive motion.  Further, this information is needed in advance of the first inventor deposition (which is scheduled for November 5, 2014), so JPMC can explore each inventor's understanding of, how, if at all, the patents-in-suit improved upon the prior art or achieve unexpected results to rebut any alleged secondary considerations of non-obviousness. *Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Trust*, 956 F. Supp. 2d 429, 487 (S.D.N.Y. 2013) *aff'd*, No. 2013-1545, 2014 WL 4100584 (Fed. Cir. Aug. 21, 2014) ("[A]rguments of unexpected results are contradicted by the data relied upon, the inventors' own words in their published articles and studies, the scientific record, and the inventors' own testimony.").

Alternatively, if IV is unwilling to provide a substantive response to this Interrogatory, JPMC asks the Court to preclude IV from presenting evidence at trial other than the assertions contained in this response.  *Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*, 248 F.R.D. 126, 157–158 (S.D.N.Y. 2007) (precluding party from introducing evidence at trial for failure to comply with discovery order pertaining to interrogatories); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002) (holding that district court has broad authority to impose sanctions on a party for discovery misconduct under its inherent power).

### 2.     IV Should Be Compelled to Answer JPMC's Interrogatory Relating to Calculating Alleged Damages

Consistent with this District's practice of permitting early damages-based contention interrogatories, JPMC seeks information regarding IV's alleged damages theories in this case:

**INTERROGATORY NO. 6**

Separately for each Accused Instrumentality identified in response to Interrogatory No. 1, describe in detail the damages that Plaintiff seeks to recover from Defendants in this lawsuit, including: (a) the type or category of damages sought, (b) the dollar amount claimed for each type or category of damages, (c) the manner by which Plaintiff calculates the dollar amount for each category, and (d) all Documents on which Plaintiff might rely to support the type, category, dollar amount, or calculation for Plaintiff alleged damages.

Ex. E, at 9.  Rather than provide responses to the specific categories of information requested in this interrogatory, IV's response merely sets forth IV's version of the legal standard to recover damages for patent infringement, provides a colloquy of approaches to calculating patent damages, and includes statements about what its damages expert "may" do, without providing any concrete information or application of the cited law to the facts of this case.  Ex. E, at 9–13. Such an answer is non-responsive, and JPMC is entitled to IV's substantive response to this interrogatory.  *Convolve,* 223 F.R.D. at 174 (ordering plaintiff to supplement answer to defendant's interrogatory and stating that plaintiff shall "set forth the amount of damages alleged with respect to each claim (to the extent that damages are unique to particular claims), the amounts attributable to each category of damages (lost profits, etc.), the methodology and calculations for arriving at those figures, and the general types of evidence that support the calculations.").

IV improperly claims that Interrogatory No. 6 is "premature in that it seeks expert opinion."  *See* Ex. E, at 9.  This argument is meritless.  This District's rules allow for interrogatories targeted at a party's damages theory at the beginning of discovery, expecting that parties will provide a meaningful answer at that time.  S.D.N.Y. Local Civil Rule 33.3(a) ("[A]t the commencement of discovery, interrogatories will be restricted to…the computation of each category of damage alleged.").

IV's assertion that it is unable to substantially answer this interrogatory because JPMC has not provided sufficient discovery is unavailing.  As an initial matter, JPMC's document production is now complete, and IV has had the vast majority of JPMC's document production for weeks, if not months.   Indeed, JPMC's damages-related document production was substantially completed several weeks ago.  In any event, IV should be able to answer many aspects of this interrogatory regardless of JPMC's own discovery.  For example, the *Georgia-Pacific* factors referenced in IV's response are factual in nature and the information relevant to those factors is unquestionably within IV's control, including "[t]he royalties received by the patentee for the licensing of the patent in suit," "[t]he licensor's established policy and marketing program," "[t]he commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter," "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity," "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results," "[t]he nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention." Ex. E, at 11-12.

### 3.    IV Should Be Compelled to Answer JPMC's Interrogatories Relating to Alleged Validity

Through its Interrogatory No. 14, JPMC seeks IV's written response to JPMC's Invalidity Contentions, and specifically IV's factual and legal basis that it intends to rely upon to establish that the patents-in-suit are not invalid:

**INTERROGATORY NO. 14**

For each asserted claim of the Patents, identify all evidence and state in detail each factual and legal basis that you intend to rely upon to establish, if you so

contend, that the Patents are not invalid under 35 U.S.C. §§ 101, 102, 103 or 112 as set forth in Defendants' Invalidity Contentions, including what you contend is the relevant field of art and the level of ordinary skill in the art of the subject matter of the Patents as of their respective filing dates, how the prior art identified by Defendants in their Invalidity Contentions does not invalidate the Patents (including at least identifying the specific claim limitation you believe is not taught by each prior art reference), and all "objective evidence" or "secondary considerations" (as set forth in *Graham v. John Deere*, 383 U.S. 1 (1966) and its progeny) that you contend shows that the subject matter of the claim is nonobvious.

Ex. E, at 19.  In response to this Interrogatory, IV relies on boiler-plate language for each limitation of each asserted claim that JPMC "failed to demonstrate that this limitation is taught in the following references cited by [Defendant]."  Ex. E, at 20-21, Exhibit A–E.  IV then lists each piece of prior art identified in JPMC's Invalidity Contentions, without any analysis or explanation as to how or why the patent remains valid in view of such art.  *Id*.  And, despite being requested to provide IV's contentions with respect to ***all*** of JPMC's invalidity grounds, IV's response does not acknowledge JPMC's contentions that the patents-in-suit are invalid under 35 U.S.C. §§ 101 and 112 as set forth in JPMC's Invalidity Contentions, nor does IV describe any evidence relating to alleged objective indicia of non-obviousness.  Such a response is deficient.

This interrogatory seeks information that is highly relevant to JPMC's invalidity case, and courts regularly compel plaintiffs to provide a substantive response to interrogatories seeking similar information.  *LifeNet Health v. LifeCell Corp.*, No. 2:13-cv-486, 2014 WL 4162113 at *6 (E.D. Va. Aug. 19. 2014) (compelling plaintiff's interrogatory response to defendant's contentions that the patent in suit is invalid as anticipated, obvious or fail to comply with the requirements of 35 U.S.C. § 112 as set for in defendant's invalidity contentions); *Layne Christensen Co. v. Purolite Co.*, No. 09-CV-2381-JWL, 2011 WL 231400, at *1 (D. Kan. Jan. 24, 2011) (compelling plaintiffs to states the "factual bases" that would either support or refute

the defense of invalidity); *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, No. 1:05-CV-01411-OWW-GSA, 2010 WL 716306, *2–*4 (E.D. Cal. Mar. 2, 2010) (ordering patentee to provide a "full and complete" response to defendant's interrogatory seeking patentee's contention that claim limitations are not found in the prior art).  While IV's response gives the appearance of an element-by-element claim chart, its purported response provides ***no factual basis*** that refutes JPMC's invalidity contentions.

## IV.   IV SHOULD BE ORDERED TO PRODUCE DOCUMENTS THAT IT HAS WITHHELD UNDER IMPROPER CLAIMS OF PRIVILEGE

IV's privilege log contains three categories of documents improperly withheld under claims of attorney-client privilege or attorney work product protection: (1) documents relating to the patents-in-suit that were created prior to IV's acquisition of the patents; (2) documents that were shared with third parties; and (3) documents created by or sent to third party evaluators or analysts.

### A.   IV Is Improperly Withholding Documents Relating to the Patents-In-Suit That Were Created Prior to Acquisition of the Patents

IV should be ordered to produce the documents and presentations on its privilege log that relate to a patent-in-suit and that are dated prior to IV's acquisition of that particular patent.  *See* Ex. C, DocId Nos. 907, 917, 937, 1062, 1079, 1083, 1197.  For each of these documents, IV claims attorney-client privilege and provides the bare-bones description that the documents were prepared either "at the direction of in-house counsel" or "by outside counsel" regarding analysis of a patent-in-suit or related patent.[4]  Notably, each document is dated ***prior*** to the date that IV's

---

[4]   In JPMC's First Set of Requests for Production to IV, JPMC requested that IV produce relevant documents for the patents-in-suit as well as any related application, continuation, continuation-in part, etc. Ex. F, at 11.

holding company purchased the particular patent-in-suit.  *See* Ex. G (showing acquisition of U.S. Patent No. 6,314,409 by IV holding company Zofillip Pro Group LLC on September 16, 2009).

In order to protect documents from disclosure under the attorney-client privilege, the party asserting the privilege must prove that the document is a "communication[] (a) between a client and his or her attorney (b) that [is] intended to be, and in fact [was], kept confidential (c) for the purpose of obtaining or providing legal advice."  *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). Because it renders relevant information undiscoverable, the privilege should be "narrowly" construed and applied "only where necessary to achieve its purpose."  *In re County of Erie*, 473 F.3d 418 (2d Cir. 2007) (internal quotations and citations omitted).

Any such claim of privilege over these documents is baseless because the documents at issue reflect business, not legal functions.  Where documents reflect activities that are "clearly business functions . . . documents resulting from these functions cannot be categorized in sweeping assertions of privileges and protection in order [to] shield the documents from discovery."  *Diagnostics Sys. Corp. v. Symantec Corp.*, No. 06-CV-1211-DOC, 2008 WL 9396387, at *6 (C.D. Cal. Aug. 12, 2008) (holding that presentation detailing "the extensive process and analysis [plaintiff's counsel] goes through when evaluating patents to acquire and targets to assert those patents against" are business, not legal, functions, and such documents cannot be protected from disclosure).  "When a document contains both legal and other advice (*e.g.,* business or financial advice), the applicability of the privilege turns on whether the 'predominant purpose' of the document was legal advice."  *William F. Shea, LLC v. Bonutti Research, Inc.*, 2:10-CV-615, 2013 WL 1499609, at *1 (S.D. Ohio Apr. 11, 2013).

The documents and presentations JPMC seeks clearly relate to IV's business functions and its day-to-day activities as a non-practicing entity, which are primarily acquiring and

licensing patents.  IV prominently admits on its website that one of its primary business purposes is to acquire and obtain unrealized value from patents through licensing.  *See e.g.*, Ex. H (http://www.intellectualventures.com/license ("we put our invention assets and intellectual property (IP) capabilities to work for our customers through portfolio licensing")).  IV also touts itself as "the world's largest buyer of individual patents" and boasts that "in a typical year [IV] evaluate[s] an average of 35,000 assets." *See* Ex. I (http://www.intellectualventures.com/sell/how-it-works).

As IV had not yet purchased these patents, IV created these presentations and documents for the clear business function of patent acquisition. ███████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

████████████

IV cannot "wash" these documents merely because an attorney was involved in the preparation or receipt.  Courts routinely hold that privilege does not apply to communications and documents when an attorney acts in his or her role as business advisor.  *See, e.g., Diagnostics Sys.*, 2008 WL 9396387, at *6 (document resulting from and reflecting business functions "cannot be categorized in sweeping assertions of privileges and protection in order to shield the documents from discovery simply because Vella is a lawyer"); *United States v. Davis*, 132 F.R.D. 12, 16 (S.D.N.Y. 1990) (finding that memorandum by corporate counsel was

discoverable and not privileged because the advice given by the attorney was primarily business related and not legal in nature); *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 204 (E.D.N.Y. 1988) ("The attorney-client privilege does not protect non-legal communications based on business advice given by a lawyer. Where a lawyer mixes legal and business advice the communication is not privileged unless 'the communication is designed to meet problems which can fairly be characterized as predominantly legal.'")

B.     **IV Is Improperly Withholding Documents That Were Shared With Third Parties**

It is axiomatic that providing a document to a third party waives any attorney-client privilege that may have attached to that document. *See United States v. Jacobs*, 117 F.3d 82, 91 (2d Cir. 1997) (voluntary public disclosure of a privileged communication constitutes a waiver of attorney-client privilege).

IV listed two documents on its privilege log that were voluntarily shared with third-party individuals for whom IV has failed to provide any description regarding their role or title. *See* Ex. C, at Doc Id Nos. 952 and 1244. Doc Id No. 952 is a document prepared at the direction of in-house counsel and was shared with a person identified as "DJ Williams." *See* Ex. C, at Doc Id No. 952. However, under IV's descriptions of the titles, affiliated companies, and roles of the various individuals who received documents on IV's privilege log, IV did not list information under any of those categories for "DJ Williams." *See* Ex. C, Recipient Names & Titles, at 30. IV has not met its burden in showing that this individual is an attorney or client.

Doc Id No. 1244 is described as a "[l]etter sent to George Weiss and John Oppenheimer" by attorney Seth H. Ostrow. *See* Ex. C, at Doc Id No. 1244. IV again fails to include any of these three individuals in its list of "Recipient Names & Titles." *See* Ex. C, Recipient Names & Titles, at 29-34. Nor does IV provide any information regarding who they are or what they do.

15

*See* Ex. C, Recipient Names & Titles at 29-34.  An internet search reveals that Mr. Weiss and Mr. Oppenheimer are part of the management team at VeriFIDES, a prior owner of one of the patents-in-suit.  Ex. K (www.verifides.com/Team.html).  These individuals are not employed by IV and they are not IV's counsel.  Even in the situation where Mr. Weiss and Mr. Oppenheimer are the clients of attorney Mr. Ostrow, attorney-client privilege over this letter would still now be waived, as this document is in the possession of third-party IV.

 **C.** **IV Is Improperly Withholding Documents Created by Outside Evaluators and Contractors**

  **1.** **IV Has Failed to Meet Its Burden of Proving That These Documents Satisfy The Elements of The Attorney-Client Privilege Or Attorney Work Product Doctrine**

In order for documents to be protected under the attorney-work product doctrine, the withholding party bears the burden of proving that the material was prepared (1) in anticipation of litigation or for trial and (2) by or for a party or by or for the party's representative.  *Polycast Tech. Corp. v. Uniroyal, Inc.,* No. 87-cv-3297, 1990 WL 138968, at *1 (S.D.N.Y., Sept. 20, 1990).  However, material is not entitled to work product protection if it is "prepared in the ordinary course of business" or "would have been created in essentially similar form irrespective of litigation."  *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998); *accord* Fed. R. Civ. P. 26(b)(3), Advisory Committee Notes, 1970 Amendment ("Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other non-litigation purposes are not under the qualified immunity provided by this subdivision.").

IV has claimed attorney-client privilege over thirty-three documents on its privilege log that were either created by or sent to external analysts and evaluators.  *See* Ex. C, at Doc Id Nos. 299, 301, 342, 377, 406, 433, 481, 917, 974, 983, 1079, 1083, 1014, 1154, 1185, 1197, 1444, 1445, 1626, 1716, 4070, 13451, 13452, 13516, 13589, 13600, 13602, 13605, 13625, 13629,

13632, 13633, 13636, 13706, 13708, 13709, and 13712.  For one other document that IV sent to an outside analyst, IV has claimed both attorney-client privilege as well as attorney work product immunity.  *See* Ex. C, at Doc Id No. 1625.

JPMC cannot adequately evaluate IV's claims of privilege on these documents because IV has not satisfied the basic requirements for proving that any privilege actually applies.  For IV's claims of attorney-client privilege, IV fails to identify the client and the attorney involved in the communication, and does not identify whether the documents were created for the purpose of providing or obtaining legal advice. *See* Ex. C.  Even after JPMC requested in its September 23 letter that IV provide such information, IV declined to do so.  This alone defeats IV's claims that privilege protects these documents from production.  *See Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993) ("[I]f the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.").

IV's failure to do so is especially troubling because although its privilege log entries identify multiple third-party analysts and evaluators as creators or recipients of the documents, IV provides **no explanation** as to how these individuals may have assisted in providing or receiving legal advice or why the attorney-client privilege should extend to them.  *See* Ex. C, at Doc Id Nos. 299, 301, 342, 377, 406, 433, 481, 917, 974, 983, 1079, 1083, 1014, 1154, 1185, 1197, 1444, 1445, 1625, 1626, 1716, 4070, 13451, 13452, 13516, 13589, 13600, 13602, 13605, 13625, 13629, 13632, 13633, 13636, 13706, 13708, 13709, and 13712.  *Burns v. Imagine Films Entm't., Inc.*, 164 F.R.D. 589, 594 (W.D.N.Y. 1996) (finding defendant's assertions of privilege without stating or demonstrating "the underlying facts or circumstances of the privilege or protection" to be deficient and holding that claims of privilege are denied).

For IV's claim of attorney work product immunity, IV does not identify the attorney involved in the creation of the document or whether the document reflects the mental thoughts or impressions of an attorney, and does not identify the potential or actual anticipated litigation for which the document was created.  *See* Ex. C, at Doc Id No. 1625.  Further, IV does not explain why the third-party analysts received this document or what role they played in its creation.  *See* Ex. C, at Doc Id No. 1625.  Once again, this failure unmoors IV's claim of privilege.  *See S.E.C. v. Beacon Hill Asset Mgmt. LLC,* 231 F.R.D. 134, 143 (S.D.N.Y. 2004) (finding defendant's claim of work product immunity deficient where defendant's privilege log failed to identify any "information regarding the circumstances under which each [document] was prepared that would support the assertion of work-product protection").

### 2.    Outside Evaluators and Contractors Are Not Privileged Persons or Agents

Even if IV had set forth the requirements for supporting its claims of privilege—which it has not—such claims still would fail because third-party analysts and evaluators are not privileged persons or agents.

Communications between a company's lawyers and its independent contractors only merit attorney-client privilege protection if "by virtue of assuming the functions and duties of full-time employees, the contractor is a *de facto* employee of the company."  *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005).  To determine whether the outside contractor should be considered the functional equivalent of an employee, this court has looked to "whether a consultant has primary responsibility for a key corporate job, whether there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in litigation, and whether the consultant is likely to possess information possessed by no one else at the company."  *Id.*

18

(internal citations omitted).  IV has the burden of showing that its contractors meet this standard of integration into its corporate structure.  *Id.*

IV has provided zero evidence to show that these third-party contractors, acting as analysts, are the functional equivalents of employees of IV.  The only information IV provides about these individuals is that they are "IV Contractor[s]" that are "External Analyst[s]."  *See* Ex. C, Recipient Names & Titles, at 29-34.  In determining whether an independent contractor is the equivalent of an employee, this Court has looked to whether the company that hired the third-party contractor had no other employees that could fulfill that role.  *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001) (independent consultant public relations firm was the functional equivalent of a corporate employee where Japanese company had no other employees who could handle public relations communications in the Western world). ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

In determining whether a contractor is the functional equivalent of an employee, this Court has also looked to the ability of the independent contractor to make decisions and to speak on the behalf of the company.  *Copper*, 200 F.R.D. at 219 (independent consultant public relations firm was equivalent of corporate employee where it made decisions on behalf of the

company with respect to public relations matters); *In re Adelphia Communs. Corp.*, No. 02-41729 (REG), 2007 WL 601452, at *9 (S.D.N.Y. Feb. 20, 2007) (independent credit counseling contractor was equivalent of corporate employee because it was given authority to make decisions and to speak on behalf of the corporation).  IV has presented no evidence that the external analysts make any decisions regarding patent acquisition, patent assertion, or any other decisions on the behalf of IV.

Other factors this Court has looked to when deciding whether an independent contractor is the functional equivalent of  a corporate employee include: (1) whether the contractor spends most of his or her working hours at the company and working on the company's matters, *Adelphia*, 2007 WL 601452, at *9 (finding independent contractor the equivalent of an employee where employee of independent contractor worked full time at the corporation for three years); *Export-Import*, 232 F.R.D. at 114 (independent contractor was not the equivalent of an employee where corporation provided the consultant with office space in its building but the office space was not used and the contractor spent substantial time on projects that were not for the corporation); (2) whether the independent contractor represents him- or herself as being affiliated with the company, *Steinfeld v. IMS Health Inc.*, No. 10 Civ 3301 (CS) (PED), 2011 WL 6179505, at *3 (S.D.N.Y. Dec. 9, 2011) (independent contractor was not the equivalent of an employee where he signed his emails as the managing director of his consulting firm and submitted memoranda on his own firm's letterhead); and (3) whether the independent contractor seeks legal advice from the company's attorneys, *Adelphia*, 2007 WL 601452, at *9 (independent contractor was equivalent of an employee where he sought legal advice from the corporation's counsel as part of his job duties).

IV has not demonstrated that the external analysts identified on its privilege log perform any of these functions that an equivalent IV employee would perform.  In fact, each of the external analysts identified on IV's log work for separate companies, and those companies work with multiple patent aggregators like IV.  For example, many of the external analysts work for Evalueserve, which identifies itself as "a leading provider of IP searches, IP intelligence and analytics services, IP management process support, innovative patent drafting solutions, and impactful R&D information to corporate clients, IP law firms, and other professional services firms in the IP industry."  *See* Ex. M (http://iprdsolutions.evalueserve.com/iprd-solutions/). Consulting companies such as Evalueserve work with multiple clients on various matters.  There is no evidence that any of the external analysts have an office at IV or that they spend most of their working time on IV's matters.

There is also no evidence that these analysts represent themselves as being affiliated with IV.  In fact, IV itself does not consider them to be affiliated with IV, as IV listed independent company names as the affiliation for each of these analysts in its privilege log.  *See* Ex. C, Recipient Name & Titles, at 29-34.  And IV has provided no evidence that these individuals ever sought out legal advice from IV's attorneys.

## V.    CONCLUSION

For the foregoing reasons, JPMC respectfully requests that the Court compel IV to immediately produce (1) supplemental responses to JPMC's Interrogatory Nos. 4, 6, and 14; (2) documents listed on its privilege log relating to the patents-in-suit that were created before IV acquired the patents; (3) documents listed on its privilege log that were shared with third parties; and (4) documents listed on its privilege log that were created by or shared with outside analysts and evaluators.

Dated: September 30, 2014

Respectfully Submitted,

/s/ Brent P. Ray
**KIRKLAND & ELLIS LLP**
Brent P. Ray
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2200
Facsimile: (312) 862-2200
brent.ray@kirkland.com

Kenneth R. Adamo
601 Lexington Avenue
New York, NY  10022-4611
Telephone:  (212) 446-4839
Facsimile:  (212) 446-4900
kenneth.adamo@kirkland.com

**DURIE TANGRI LLP**
Clement S. Roberts
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:  (415) 362-6666
Facsimile:  (415) 236-6300
croberts@durietangri.com

**DONTZIN NAGY & FLEISSIG LLP**
Matthrew S. Dontzin
Tibor L. Nagy, Jr.
Rachel K. Clapp
980 Madison Avenue
New York, NY  10075
Telephone:  (212) 717-2900
Facsimile:  (212) 717-8088
mdontzin@dnfllp.com
tibor@dnfllp.com
rclapp@dnfllp.com

*Attorneys for Defendants / Counterclaim-Plaintiffs*