# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, a limited liability corporation, | ) ) ) | **Case No. 13 Civ. 3777 (AKH)** |
| Plaintiff, | ) ) ) | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR SECOND OMNIBUS MOTION TO COMPEL** |
| v. | ) ) | |
| JP Morgan Chase & Co. et al, | ) ) | **ECF Case** |
| Defendants. | ) ) ) | |

### TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | **INTRODUCTION** | 1 |
| II. | **FACTUAL BACKGROUND** | 2 |
|  | A. IV's Email Privilege Log | 2 |
|  | B. IV's Supplemental Responses to JPMC's First Set of Interrogatories and Responses to JPMC's Second Set of Interrogatories | 3 |
| III. | **IV SHOULD BE ORDERED TO PRODUCE EMAILS THAT IT HAS WITHHELD UNDER IMPROPER CLAIMS OF PRIVILEGE** | 4 |
|  | A. IV Has Failed to Meet Its Burden of Proving That The Emails on Its Log Satisfy The Elements of The Attorney Client-Privilege | 5 |
|  | B. IV Is Improperly Withholding Emails Relating to Patent Acquisitions and Licensing | 7 |
|  | C. IV Is Improperly Withholding Emails That Were Shared With Third Parties | 9 |
| IV. | **IV SHOULD BE COMPELLED TO PROVIDE COMPLETE, SUBSTANTIVE RESPONSES TO JPMC'S INTERROGATORY NOS. 1, 3, 5, 7, 18, 19, 22, 23, AND 24** | 10 |
|  | A. IV Should Be Compelled to Answer JPMC's First Set of Interrogatories Nos. 1, 3, 5, 7, 18, 19 | 11 |
|  | 1. IV Should Be Compelled to Answer JPMC's Interrogatory Identifying the Products It Has Accused of Infringement | 11 |
|  | 2. IV Should Be Compelled to Answer JPMC's Interrogatory Identifying the Dates of Conception and Reduction to Practice | 12 |
|  | 3. IV Should Be Compelled to Answer JPMC's Interrogatory Identifying When IV First Became Aware of the Accused Instrumentalities and JPMC's Alleged Infringement | 14 |
|  | 4. IV Should Be Compelled to Answer JPMC's Damages Interrogatories, and Identify the Date of the Hypothetical Negotiation and Offers to License the Patents-in-Suit | 15 |
|  | 5. IV Should Be Compelled to Answer JPMC's Interrogatories Relating to the Validity of the Patents-in-Suit | 16 |

B.    IV Should Be Compelled to Answer JPMC's Second Set of Interrogatories Nos. 22, 23, and 24. ........................................................................................... 19

**V.    CONCLUSION** ...................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
   960 F.2d 1020 (Fed. Cir. 1992)......................................................................... 15

*Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*,
   96 CIV. 2717, 1997 WL 232316 (S.D.N.Y. May 7, 1997) ................................... 18

*Automated Merch. Sys. Inc. v. Crane Co.*,
   279 F.R.D. 366 (N.D.W. Va. 2011) .................................................................. 11

*Beneficial Innovations, Inc. v. Blockdot, Inc.*,
   No. 2:07-CV-263, 2010 WL 2246291 (E.D. Tex. June 3, 2010)............................. 21

*Browne of New York City, Inc. v. AmBase Corp.*,
   150 F.R.D. 465 (S.D.N.Y. 1993).......................................................................... 7

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
   602 F.2d 1062 (2d Cir. 1979).............................................................................. 10

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*,
   105 F.R.D. 16 (S.D.N.Y. 1984).......................................................................... 13

*Cornell Research Found., Inc. v. Hewlett Packard Co.*,
   No. 5:01-CV-1974, 2005 WL 5955005 (N.D.N.Y. Sept. 26, 2005) ........................ 20

*County of Santa Clara v. Astra USA, Inc.*,
   No. 05-CV-3740, 2009 WL 2868428 (N.D. Cal Sept. 3, 2009) ............................. 20

*Cuno, Inc. v. Pall Corp.*,
   121 F.R.D. 198 (E.D.N.Y. 1988) ......................................................................... 8

*Diagnostics Sys. Corp. v. Symantec*,
   2008 WL 93963876 (C.D. Cal. Aug. 12, 2008) .................................................. 7, 8

*Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*,
   No. 1:05-CV-01411, 2010 WL 716306 (E.D.Cal. Mar. 2, 2010) ........................... 18

*Golden Trade, S.r.L. v. Lee Apparel Co.*,
   143 F.R.D. 512 (S.D.N.Y. 1992).......................................................................... 17

*Green v. New York City Dep't of Corr. Servs.*,
   No. 94-CV-6772, 1996 WL 3951 (S.D.N.Y. Jan. 4, 1996)..................................... 20

*In re County of Erie*
   473 F.3d 418 (2d Cir. 2007)................................................................................ 5

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
   274 F.3d 1371 (Fed. Cir. 2001) .......................................................................... 16

*Laserdynamics, Inc. v. Asus Computer Int'l*,
   No. 2:06-CV-348, 2009 WL 153161 (E.D. Tex. Jan. 21, 2009)........................ 16, 20

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ............................................................................. 16, 20

*Layne Christensen Co. v. Purolite Co.*,
    No. 09-CV-2381, 2011 WL 231400 (D. Kan. Jan. 24, 2011) ................................ 12

*LifeNet Health v. LifeCell Corp.*,
    No. 2:13-CV-486, 2014 WL 4162113 (E.D. Va. Aug. 19, 2014) ......................... 18

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ........................................................................... 16

*Lunts v. Rochester City School Dist.*,
    No. 07-CV-6272, 2011 WL 108913 (W.D.N.Y. Jan. 12, 2011) ............................. 5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ........................................................................................ 18

*Pfizer Inc. v. Teva Pharm. USA, Inc.*,
    No. 04-CV-754, 2006 WL 2938723 (D.N.J. Oct. 13, 2006) .................................. 12

*Rambus Inc. v. NVIDIA Corp.*,
    No. 08-CV-05500, 2011 WL 11746749 (N.D. Cal. Aug. 24, 2011) ....................... 12

*Riles v. Shell Exploration & Prod. Co.*,
    298 F.3d 1302 (Fed. Cir. 2002) ........................................................................... 19

*S.E.C. v. Yorkville Advisors, LLC*,
    300 F.R.D. 152 (S.D.N.Y. 2014) ............................................................................ 5

*SanDisk Corp. v. Round Rock Research LLC*,
    No. 11-cv-05243, 2014 WL 691565 (N.D. Cal. Feb. 21, 2014) ............................. 8

*Softview Computer Prods. Corp. v. Haworth, Inc.*,
    No. 97 CIV. 8815, 2000 WL 351411 (S.D.N.Y. Mar. 31, 2000) ............................. 9

*U.S. v. Const. Prods. Research, Inc.*,
    73 F. 3d 464 (2d Cir. 1996) ................................................................................... 7

*U.S. v. Davis*,
    132 F.R.D. 12 (S.D.N.Y. 1990) .............................................................................. 8

*UltimatePointer, L.L.C. v. Nintendo Co.*,
    No. 6:11-CV-496, 2013 WL 6253767 (E.D. Tex. 2013) ....................................... 15

*United States v. Jacobs*,
    117 F.3d 82 (2d Cir. 1997) .................................................................................... 9

*United States v. Mejia*,
    655 F.3d 126 (2d Cir. 2011) .................................................................................. 5

*Urban Box Office Network, Inc. v. Interfase Managers, L.P.*,
    No. 01 CIV. 8854, 2006 WL 1004472 (S.D.N.Y. Apr. 18, 2006) ........................... 9

*William F. Shea, LLC v. Bonutti Research, Inc.*,
    WL 1499609 (S.D. Ohio Apr. 11, 2013) ................................................................. 8

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Wright v. Stern*,
  No. 01-CV-4437, 2003 WL 136090 (S.D.N.Y. Jan. 14, 2003).................................... 13

*Yama Capital LLC v. Canon Inc.*,
  No. 12-CV-7159, 2013 WL 6588589 (S.D.N.Y. Dec. 13, 2013)............................ 11

**Statutes**

35 U.S.C. § 112 ¶ 1 ................................................................................................... 19

**Rules**

Fed. R. Civ. P. 33(b)(3).......................................................................................... 23, 24

Fed. R. Civ. P. 33(d) ................................................................................................ 15

Fed. R. Civ. P. 37(c)(1)............................................................................................ 11

## I.      INTRODUCTION

Further to their First Omnibus Motion to Compel filed on September 30, 2014 ("First Omnibus Motion"), and pursuant to Rules 37(a)(1) and 34(a) of the Federal Rules of Civil Procedure, Defendants J.P. Morgan Chase & Co., JPMorgan Chase Bank, National Association, and Chase Bank USA, National Association (collectively "JPMC") have filed this Second Omnibus Motion to Compel to address additional deficiencies in the discovery provided by Plaintiff Intellectual Ventures II LLC ("IV") that have come to light since the First Omnibus Motion was filed.  Specifically, JPMC seeks an order compelling IV to produce the following emails improperly listed on IV's *email* privilege log: (1) emails for which IV did not provide sufficient information to support its claims of privilege by failing to identify any attorney involved in the communication; (2) emails relating to patent acquisition and licensing; and (3) emails that were created by or sent to third parties including external consultants and analysts. JPMC also seeks an order compelling IV to supplement certain deficient interrogatory responses provided after the First Omnibus Motion was prepared.[1]

Regarding IV's email privilege log, IV continues to evade its discovery obligations by withholding relevant, non-privileged emails through inapplicable assertions of attorney-client privilege.  IV claims privilege over 3,026 emails, but for many of those entries, fails to meet even the minimum requirements of showing that attorney-client privilege applies.  For example, for over 800 of the emails on its email log, IV claims attorney-client privilege, yet, does not identify a *single attorney* involved in these communications.  IV is also withholding emails relating to patent acquisitions and licensing.  However, these emails relate to *business* discussions—not legal advice—as IV's core business function is that of patent acquisition and

---

[1]     Similar deficiencies in IV's ***non-email*** privilege log, as well as deficiencies in certain others of IV's interrogatory responses, are addressed in the First Omnibus Motion.  Dkt No. 190.

licensing.  These emails cannot be withheld from disclosure on the basis of privilege.  IV is additionally withholding emails that were created by or voluntarily shared with third parties, including external consultants and analysts.  IV, however, has not provided any basis for extending the attorney-client privilege to these third parties, and the emails that were created by or shared with them should not be withheld as privileged.

IV has also continued to provide deficient interrogatory responses.  Specifically, IV's supplemental responses to JPMC's First Set of Interrogatories fail to provide basic, relevant information, such as the accused products in this litigation, and IV's positions on invalidity and damages.  In response to JPMC's Second Set of Interrogatories, IV simply failed to respond to certain of the interrogatories.  JPMC is entitled to this information, and accordingly, seeks an order from the Court compelling IV to provide information responsive to Interrogatory Nos. 1, 3, 5, 7, 18, 19, 22, 23 and 24.

## II.    FACTUAL BACKGROUND

### A.    IV's Email Privilege Log

IV substantially completed its email production on September 18, 2014, and on September 26, 2014, only four days before the close of document discovery, produced its final email privilege log to JPMC ("email log"),[2] claiming attorney-client privilege over 3,080 emails and attachments.  *See* Ex. A.[3]  Given the volume of entries on IV's email log, JPMC informed IV that it reserved its right to to file a motion to compel relating to the email log by the October 7,

---

[2]    IV separately served, on September 15, 2014, its final document privilege log.  JPMC moved to compel certain of the documents from that log on September 30, 2014.  Dkt. No. 190. IV's email log suffers from many of the same deficiencies as the document privilege log.

[3]    The exhibits cited in this memorandum are attached to the concurrently filed Declaration of Brent P. Ray in Support of Defendants' Memorandum of Law in Support of Their Second Omnibus Motion to Compel.

2014 deadline the parties agreed to in their joint letter to the Court.  Dkt. No. 179.  JPMC also requested that IV provide a list identifying the role and titles of each individual listed in IV's email log so that JPMC could review IV's claims of privilege, which IV provided on October 2, 2014—two full days after the close of document discovery and six days after IV produced its email log to JPMC.  *See* Ex. B; Ex. C.  On October 3, 2014, IV provided JPMC with an updated email log containing 3,026 entries.  *See* Ex. D.

JPMC identified for IV the deficiencies in the email log, including that the email log contained many documents that were sent to external third parties, documents that were sent or created for the purpose of patent acquisition or licensing, and documents for which the log entry did not identify a single attorney.  *See* Ex. E.  The parties met and conferred on October 6, 2014 and IV refused to produce the categories of documents identified by JPMC.

### B.   IV's Supplemental Responses to JPMC's First Set of Interrogatories and Responses to JPMC's Second Set of Interrogatories

On August 19, 2014, JPMC served its Revised First Set of Interrogatories, many of which sought IV's contentions on fundamental issues in this case, such as which specific products IV is accusing of infringement, the circumstances regarding the alleged conception and reduction to practice of the claimed inventions in the patents-in-suit, and information concerning IV's alleged damages.  JPMC served a Second Set of Interrogatories on August 29, 2014, seeking additional information on, among other things, damages and claim interpretation.

In response to JPMC's Revised First Set of Interrogatories, IV supplied boilerplate objections and failed to provide a meaningful answer to many of JPMC's interrogatories ("IV's Responses"), including Nos. 1, 3, 5, 7, 18, 19.  After, JPMC identified the significant deficiencies in IV's Responses and requested that IV amend them, IV informed JPMC that it

would supplement certain of interrogatory responses.[4]  Dkt. No. 192-2; Dkt. No. 192-3.  When JPMC received IV's supplemental responses ("IV's Supplemental Responses"), however, the responses continued to be deficient and failed to provide the responsive information to which JPMC is entitled.

IV served its response to JPMC's Second Set of Interrogatories on September 29, 2014, which contained similar deficiencies as IV's responses to JPMC's First Set of Interrogatories.  Ex. F, at 8–9.

During the parties' meet and confer on October 6 and in subsequent emails, IV confirmed that it would not provide sufficient supplementary responses for Interrogatory Nos. 1, 3, 5, 7, 18, 19, 22, 23 and 24.  Ex. G.  The parties have reached an impasse, and JPMC has no choice but to request that the Court order IV to provide a complete and immediate response to those interrogatories.

## III.   IV SHOULD BE ORDERED TO PRODUCE EMAILS THAT IT HAS WITHHELD UNDER IMPROPER CLAIMS OF PRIVILEGE

None of the 3,026 entries on IV's October 3, 2014 email log provide JPMC with adequate information to evaluate IV's claims of attorney-client privilege.  Beyond that basic fact, which is detrimental to supporting any of IV's claims of privilege, IV's email log contains three categories of email communications that are improperly withheld under a claim of attorney-client privilege: (1) emails for which IV has not identified a single attorney involved in the communication; (2) emails relating to patent acquisitions and licensing; and (3) emails that were created by or sent to third parties, including external consultants and analysts.  *See* Ex. H; Ex. I; Ex. J.

---

[4]   IV also confirmed that it would not supplement its responses to JPMC's Interrogatory Nos. 4, 6, 14.  JPMC separately has moved to compel supplemental responses.  Dkt. No. 191.

A.     **IV Has Failed to Meet Its Burden of Proving That The Emails on Its Log Satisfy The Elements of The Attorney Client-Privilege**

Many of the emails identified on IV's email log fail to meet even the most basic requirements of showing that the attorney-client privilege applies: identifying the client and counsel involved in the communication.[5]   In order to protect documents from disclosure under the attorney-client privilege, the party asserting the privilege must prove that the document is a "communication[] (1) between a client and his or her attorney (2) that [is] intended to be, and in fact [was], kept confidential (3) for the purpose of obtaining or providing legal advice."  *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011.)   Because it renders relevant information undiscoverable, the privilege should be "narrowly" construed and applied "only where necessary to achieve its purpose."  *In re County of Erie*, 473 F.3d 418 (2d Cir. 2007) (internal quotations and citations omitted).  When a party withholds communications or documents on the grounds of privilege, it must both: (1) expressly make the claim; and (2) describe the nature of the communications or documents not produced in a manner that will enable other parties to assess the claim, such as within a privilege log.  *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 157 (S.D.N.Y. 2014).  A party must proffer a ***specific*** and ***detailed explanation*** of why the particular document is claimed to be privileged and explain how ***each element*** of the attorney-client privilege is met as to each of the listed emails.  *Lunts v. Rochester City School Dist.*, No. 07-CV-6272, 2011 WL 108913, at *1 (W.D.N.Y. Jan. 12, 2011) (finding a privilege log that included "the dates of the e-mails, who the e-mails are to and from, and that they are protected by the attorney-client privilege" to be insufficient). A party's failure to comply with these requirements may result in a waiver of privilege.  *Id.*

---

[5]   Each of the documents that JPMC now moves to compel on the basis that IV has failed to identify a single attorney involved in the communication are identified in Exhibit H.

JPMC cannot adequately evaluate IV's claims of privilege over these 867 emails on IV's email log because, for these emails, IV has failed to identify the client and the attorney involved in the communications, and does not identify whether each email was created for the purpose of providing or obtaining legal advice.  *See* Ex. H.  The fact that IV did not identify an attorney included on these communications, or at whose direction these communications were made, calls into question the legitimacy of IV's privilege claims.  For example, IV claims attorney-client privilege over an email sent from Thomas Choi, an engineer at IV, to Chris Spadea, Theme Team Lead.  Ex. H, at DocId 197214; Ex. C.  No other individual, attorney or otherwise, is identified as being involved in this communication. Ex. H, at DocId 197214. And for IV's description of the privilege, IV generally indicates that the communication "contain[s] and request[s] legal advice regarding technical analysis" without identifying who gave or who requested this advice.  *Id.*  Similarly, IV's email log lists several email communications between Jim Weisfield, IV's Head of Divestitures, and Steve Mallouk, IV's VP of Channel Sales & Licensing and Field Marketing.  *Id.*, at DocId Nos. 324856-62.  The entries for these documents contain the generic description, "Attachment containing legal advice regarding licensing."  *Id.* at 324857-62.  Entries like these pervade IV's email log.  *See* Ex. H.

IV's claims of privilege are even more implausible for some communications such as an email sent ***from*** Chris Spadea ***to*** Chris Spadea, "requesting legal advice regarding licensing." *Id.*, at DocId No. 197330.  IV cannot possibly claim that Chris Spadea, a non-attorney, requested legal advice from himself.  With such insufficient and implausible information given to sustain its claims, IV should be ordered to produce these emails and attachments to JPMC.

IV cannot claim attorney-client privilege over emails without identifying the attorney involved in the communication and whether the communication was for the purpose of obtaining

or providing legal advice.  *See U.S. v. Const. Prods. Research, Inc.*, 73 F. 3d 464, 473 (2d Cir. 1996) (holding that to invoke attorney-client privilege, a party must demonstrate that there was a communication **between a client and counsel**); *Browne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993) (finding that "[t]o sustain a claim of privilege, the party invoking it must demonstrate that the information at issue was a communication **between client and counsel** or his employee …") (emphasis added).  Because IV has failed to provide any information to support its claims of attorney-client privilege, IV should be ordered to produce each of the documents identified in Exhibit H.

### B.     IV Is Improperly Withholding Emails Relating to Patent Acquisitions and Licensing

For over 2,500 of the emails listed on IV's email log, IV claims attorney-client privilege and provides a bare-bones description indicating that the emails relate to "legal advice regarding acquisitions" and/or "licensing."[6]  IV should be ordered to produce these emails because they reflect business, not legal functions.   Where documents reflect activities that are "clearly business functions . . . documents resulting from these functions cannot be categorized in sweeping assertions of privileges and protection in order [to] shield the documents from discovery."  *Diagnostics Sys. Corp. v. Symantec Corp.*, No. 06-CV-1211, 2008 WL 9396387, at *6 (C.D. Cal. Aug. 12, 2008), (holding that presentation detailing "the extensive process and analysis [plaintiff's counsel] goes through when evaluating patents to acquire and targets to assert those patents against" are business, not legal, functions, and such documents cannot be protected from disclosure).   "When a document contains both legal and other advice (*e.g.,* business or financial advice), the applicability of the privilege turns on whether the 'predominant

---

[6]     Each of the documents JPMC moves to compel on the basis that they are related to business functions, not legal functions are identified in Exhibit I.

purpose' of the document was legal advice." *William F. Shea, LLC v. Bonutti Research, Inc.*, 2:10-CV-615, 2013 WL 1499609, at *1 (S.D. Ohio Apr. 11, 2013) (internal citation omitted).

As JPMC has demonstrated in previous briefings with the Court, IV is a non-practicing entity and its business functions and day-to-day activities primarily relate to the acquiring and licensing of patents. *See* Dkt No. 114 at 7-8; Dkt. No. 191 at 13-14. Where an entity's primary business function is the acquiring and licensing of patents, courts have held that documents and communications relating to those business functions are not protected by attorney-client privilege. *Diagnostics*, 2008 WL 9396387, at *5, *7 (finding that where non-practicing entity's main business objectives were to license and acquire patents, documents and communications created to further those business goals were not protected by attorney-client privilege); *SanDisk Corp. v. Round Rock Research LLC*, No. 11-cv-05243, 2014 WL 691565, at *3 (N.D. Cal. Feb. 21, 2014) (finding that documents relating to non-practicing entity's analysis of potential licensing targets were not protected by privilege because they were created for a business purpose).

IV cannot claim privilege over these emails merely because an attorney was involved in drafting them or received them. The attorney-client privilege does not apply to communications and documents where an attorney acts in his or her role as business advisor. *See, e.g., Diagnostics Sys.*, 2008 WL 9396387, at *6 (document resulting from and reflecting business functions "cannot be categorized in sweeping assertions of privileges and protection in order to shield the documents from discovery simply because [plaintiff's counsel] is a lawyer"); *United States v. Davis*, 132 F.R.D. 12, 16 (S.D.N.Y. 1990) (finding that memorandum by corporate counsel was discoverable and not privileged because the advice given by the attorney was primarily business-related and not legal in nature); *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 204

(E.D.N.Y. 1988) ("Where a lawyer mixes legal and business advice the communication is not privileged unless 'the communication is designed to meet problems which can fairly be characterized as predominantly legal.'"); *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, No. 01 CIV. 8854, 2006 WL 1004472, at *6 (S.D.N.Y. Apr. 18, 2006) (finding that defendants' claims of privilege over communications about a stock purchase agreement, which was a business transaction, were not protected by privilege simply because the communications were to, from, or copied attorneys); *Softview Computer Prods. Corp. v. Haworth, Inc.*, No. 97 CIV. 8815, 2000 WL 351411 (S.D.N.Y. Mar. 31, 2000) (finding that counsel's notes reflecting certain terms of a licensing agreement with a competitor reflected only business and financial information and were not protected by attorney-client privilege).

### C.   IV Is Improperly Withholding Emails That Were Shared With Third Parties

It is axiomatic that providing a document or communication to a third party waives any attorney-client privilege that may have attached to that communication. *See United States v. Jacobs*, 117 F.3d 82, 91 (2d Cir. 1997) (voluntary public disclosure of a privileged communication constitutes a waiver of attorney-client privilege).

IV has claimed attorney-client privilege over 450 emails that were either created by or sent to third-party consultants or analysts.[7]  As JPMC demonstrated in earlier briefing, these third-party analysts and consultants are not privileged persons because they cannot be considered the functional equivalents of IV employees.  *See* Dkt. No. 191 at 18-21.  The only information IV provides about these individuals is their name, title (which is often listed simply as "External Consultant" or "External Analyst"), the company they are employed by, and the fact that they are considered a "contractor" of IV.  *See* Ex. J; Ex. C.  JPMC previously set forth the factors that

---

[7]   Each of the documents JPMC moves to compel on the basis that they were created by or sent to third parties are identified in Exhibit J.

courts look to in determining whether a third-party contractor qualifies as the functional equivalent of an employee. *See* Dkt. No. 191 at 18-21. As JPMC demonstrated then, IV has provided zero evidence to show that any third-party contractors are the functional equivalents of IV employees. *Id.* As IV has not met its burden in proving that these individuals are privileged persons, the emails that were created by or shared with these individuals should be produced to JPMC.

## IV.   IV SHOULD BE COMPELLED TO PROVIDE COMPLETE, SUBSTANTIVE RESPONSES TO JPMC'S INTERROGATORY NOS. 1, 3, 5, 7, 18, 19, 22, 23, AND 24

JPMC requested that IV provide basic information about the patents-in-suit and IV's alleged damages. The Federal Rules of Civil Procedure and this Court's precedents entitle JPMC to IV's written responses to these highly relevant inquiries. IV's Supplemental Responses and Responses, however, are incomplete or entirely non-responsive and, as a result, prejudice JPMC's ability to defend itself in this case and to prepare for and take the necessary depositions within the Court-ordered period of fact discovery. *See also* Dkt. No. 191 at 5-6 (noting that satisfactory responses to interrogatories narrow the issues for depositions and expert discovery). JPMC therefore requests that the Court order IV to provide complete responses to JPMC's interrogatories immediately. If IV does not provide that information, JPMC asks the Court to preclude IV from relying on any evidence of information not provided in its response to those interrogatories pursuant to the Federal Rules. *See* Fed. R. Civ. P. 37(c)(1); *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1063–66, 1068 (2d Cir. 1979) (reversing district judge's order declining to adopt magistrates recommendation that plaintiff be prevented from offering evidence with respect to damages because of failure to answer defendant's interrogatories and comply with court order).

A.   **IV Should Be Compelled to Answer JPMC's First Set of Interrogatories Nos. 1, 3, 5, 7, 18, 19**

   1.   IV Should Be Compelled to Answer JPMC's Interrogatory Identifying the Products It Has Accused of Infringement

Despite JPMC's repeated requests since the beginning of this litigation, IV has failed to specifically identify which products it is accusing of infringement.  Seeking to understand IV's allegations, JPMC served Interrogatory No. 1:

**<u>INTERROGATORY NO. 1</u>**

Identify each Accused Instrumentality by Patent and by asserted claim.

Ex. K at 5.  IV's Response, however, did not identify these products and instead cited to IV's deficient February 27, 2014 Infringement Contentions.  *Id.*  IV's Supplemental Response cites to its September 30, 2014 Amended Infringement Contentions, which remain vague and deficient because they do not specifically identify each individual accused instrumentality.  Ex. *Id.* at 6. For example, IV's Amended Contentions identify broad technology categories rather than specific instrumentalities. In other instances, IV's Amended Contentions list the names of JPMC's vendors, but do not identify which of these vendors' products implicate the patents-in-suit.  JPMC cannot be forced to guess which products are accused.  *See Yama Capital LLC v. Canon Inc.*, No. 12-CV-7159, 2013 WL 6588589, at *5–6 (S.D.N.Y. Dec. 13, 2013) ("Infringement contentions must specifically identify how a plaintiff believes an asserted claim's limitations are practiced by some feature or process of an accused [product], and cannot merely incorporate blanket accusations against [the accused product] as a whole.").  JPMC is entitled to a more detailed interrogatory response.  *Automated Merch. Sys. Inc. v. Crane Co.*, 279 F.R.D. 366, 376 (N.D.W. Va. 2011) (compelling plaintiff to respond to interrogatory that requested "[s]eparately for each Asserted Claim, identify each accused apparatus, product, device, process, method, act or other instrumentality [] made, used, sold, or offered for sale by Crane that AMS

11

contends infringes such Asserted Claim. Identify each product, device, and apparatus by name or model number" after defendant had produced technical documents.); *see also Rambus Inc. v. NVIDIA Corp.*, No. 08-CV-05500, 2011 WL 11746749, at *3–6 (N.D. Cal. Aug. 24, 2011) (compelling plaintiff to amend its infringement contentions because plaintiff "does not specifically identify each accused product").

> 2.   IV Should Be Compelled to Answer JPMC's Interrogatory Identifying the Dates of Conception and Reduction to Practice

JPMC served Interrogatory No. 3 seeking to understand the dates and circumstances underlying the alleged conception and reduction to practice of the patents-in-suit:

**<u>INTERROGATORY NO. 3</u>**

> For each asserted claim of the Patents, describe in detail all facts relating to its conception, diligence and reduction to practice, including the alleged dates of such conception and reduction to practice, the person(s) who were diligent in reducing the invention to practice, a detailed description of their activities and all evidence or testimony on which you intend to rely to establish such conception, diligence and reduction to practice.

Ex. K at 6.  IV's Supplemental Responses and Responses to this Interrogatory are deficient and IV should be ordered to provide this information.  *Layne Christensen Co. v. Purolite Co.*, No. 09-CV-2381, 2011 WL 231400, at *2–3 (D. Kan. Jan. 24, 2011) (granting motion to compel response to defendant's interrogatory directed to the history and process leading to the alleged invention, and stating "[d]irecting Defendant to search Plaintiffs' discovery responses and disclosures constitutes an unacceptable answer to the interrogatory."); *Pfizer Inc. v. Teva Pharm. USA, Inc.*, No. 04-CV-754, 2006 WL 2938723, at *3 (D.N.J. Oct. 13, 2006) (holding that a patent holder's disclosure of "the inventor's laboratory notebook pages that it relies upon to support the . . . conception date and ma[king] the relevant witnesses available for depositions" was a "materially incomplete or incorrect" interrogatory response).

Instead of providing the factual information that JPMC requested, IV has provided an improper Rule 33(d) response, which, with respect to the '666, '409, and '694 patents, merely identifies thousands of pages of documents produced by third parties.  Ex. K at 6–8, Exhibit A. And, with respect to the '574 patent, IV's Supplemental Response identifies certain articles, but fails to specify where the articles identified in its response can be found in IV's production and which aspects of conception are allegedly evidenced by these articles.  *Id.*

When responding to an interrogatory pursuant to Rule 33(d), as IV purports to do, a party must "specify[] the records that must be reviewed in sufficient detail" to enable the other party to determine the answer.   Fed. R. Civ. P. 33(d); *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 44 (S.D.N.Y. 1984) ("It is an abuse of the [Rule 33(d)] option to merely direct the interrogating party to a mass of business records.") (internal citation omitted); *Wright v. Stern*, No. 01-CV-4437, 2003 WL 136090, at *2 (S.D.N.Y. Jan. 14, 2003) (holding that where defendants responded to an interrogatory by "refer[ring] in general terms to several thousand pages of documents," the defendants were required to analyze the documents themselves and give a specific answer because the analysis could be "provided far more readily by defendants from their own computer files").   It is improper for IV to identify an expansive collection of records without ***any*** explanation as to how that testimony and those documents support IV's alleged conception and reduction to practice dates.[8]

Moreover, IV's use of the modifier "no later than" is improper.  The importance of this information is clear: qualified language makes JPMC's invalidity case a moving target—without

---

[8]   On August 20, 2014, IV sent a letter to JPMC identifying the documents supporting the claimed priority dates for the '694 and '409 patents.  Ex. L.  Similar to IV's deficient interrogatory responses, however, this letter provides ***no information*** as to how these document support IV's claimed priority dates.

knowing that dates of conception and reduction to practice, JPMC cannot define what qualifies as prior art to the patents-in-suit.  JPMC is entitled to unqualified conception and reduction to practice dates for each of the patents-in-suit. *See Rambus Inc.*, 2011 WL 11746749 at *3 ("Rambus's use of the phrase 'at least the priority date of' [in infringement contentions] does not adequately specify the priority date to which each asserted claim alleged is entitled.") (internal citation omitted); *Nazomi Commc'ns, Inc. v. Arm Holdings PLC*, No. 02-CV-02521, 2003 WL 24054504, at *1–2 (N.D. Cal. Sept. 3, 2003) ("The Court finds that [plaintiff's] response to Interrogatory No. 3 [that the relevant dates are 'no later than December 8, 1998'] is vague and ambiguous with respect to the date(s) of conception and reduction to practice.").

       3.      IV Should Be Compelled to Answer JPMC's Interrogatory Identifying When IV First Became Aware of the Accused Instrumentalities and JPMC's Alleged Infringement

JPMC sought a description of the circumstances under which IV first became aware of the instrumentalities accused of infringement, as well as JPMC's making, use, sale or offer for sale of them:

**<u>INTERROGATORY NO. 5</u>**

Describe in detail the circumstances under which you first became aware of Defendants' alleged making, use, sale, or offer for sale of each Accused Instrumentality identified in response to Interrogatory No. 1, including by identifying: (a) the date you first became aware of the Accused Instrumentality, (b) how you became aware of the existence of each Accused Instrumentality, (c) the basis on which you determined that Defendants made, used, sold, or offered to sale each Accused Instrumentality, and (d) each Person knowledgeable about the aforementioned circumstances.[9]

---

9    JPMC's definitions make unequivocally clear that "You" is defined as IV, not its counsel:

"You" and "Yours" refer to Intellectual Ventures II LLC, Intellectual Ventures Management, LLC, and all of their agents, representatives, affiliates, predecessor or successor corporations, or others acting or purporting to act on behalf of any of the foregoing.  Ex. M at 8.

Ex. K at 8.   IV's Supplemental Response states that its **counsel** began an investigation of JPMC's **alleged infringement** on or about May 2013, and provides the dates on which the investigation was complete.   *Id.* at 8–9.   JPMC's interrogatory, however, calls for a description of the circumstances under which *IV* first became aware of JPMC's alleged infringement and *IV's* knowledge of the Accused Instrumentalities—**not** only its counsel's investigation.   IV's knowledge of the Accused Instrumentalities themselves, as well as JPMC's alleged use of them, is relevant to, *inter alia*, JPMC's Fifth Affirmative Defenses of laches.   Dkt. No. 34.   If IV had notice of JPMC's alleged infringement and the accused instrumentality, yet waited for years to bring suit, IV's claims may be barred by laches.   *See A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028–41 (Fed. Cir. 1992).   JPMC is entitled to a complete response to Interrogatory No. 5, identifying when IV first became aware of the instrumentalities that it has identified in its infringement contentions, as well as JPMC's first use of them.   *See UltimatePointer, L.L.C. v. Nintendo Co.*, No. 6:11-CV-496, 2013 WL 6253767, at *4 (E.D. Tex. 2013) (granting in part motion to compel patentee to answer interrogatory seeking "[f]or each Accused Product in the table below, identify (i) the date You first learned of the product …").

      4.      IV Should Be Compelled to Answer JPMC's Damages Interrogatories, and Identify the Date of the Hypothetical Negotiation and Offers to License the Patents-in-Suit

JPMC's First Set of Interrogatories seeks various information regarding IV's alleged damages in this case, including IV's contentions for the dates of the hypothetical negotiation:

**<u>INTERROGATORY NO. 7</u>**

Separately for each of the Patents and for each Accused Instrumentality, identify the date(s) on which you contend the hypothetical negotiation(s) with respect to Defendants' alleged infringement would have taken place and all parties you contend would have participated in said hypothetical negotiation(s); describe in detail the bases for that contention, and identify all evidence or testimony on which you may rely to support that contention.

Ex. K at 9.   IV's Supplemental Response and Response baldly states "[t]he date of the hypothetical negotiation(s) is the date on which JPMorgan's infringement commenced…," yet does not identify any such dates.  *Id.* at 10.  This information is relevant to IV's alleged damages. As this Court knows, the "hypothetical negotiation or the "willing licensor-willing licensee approach," attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).  The hypothetical negotiation is based on the circumstances that existed at the time infringement first began.  *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1384 (Fed. Cir. 2001) ("[T]he negotiation must be hypothesized as of the time infringement began.").   Therefore, the date of the hypothetical negotiation is critical to the damages calculus.  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012) ("We have explained that the 'correct determination of the hypothetical negotiation date is essential for properly assessing damages.'") (internal citation omitted).  JPMC is entitled to IV's written response to this interrogatory.  *Laserdynamics, Inc. v. Asus Computer Int'l*, No. 2:06-CV-348, 2009 WL 153161, at *4 (E.D. Tex. Jan. 21, 2009) ("Interrogatory Number 24 asks Asustek to provide its proposed date for the hypothetical license negotiation. Once again, Asustek refused to do so. The court overrules Asustek's objections, and orders it to provide the plaintiff with a full and complete narrative answer within 11 days.").

>    5.    IV Should Be Compelled to Answer JPMC's Interrogatories Relating to the Validity of the Patents-in-Suit

JPMC's First Set of Interrogatories seeks information regarding the validity of the patents-in-suit through Interrogatory Nos. 18 and 19.  First, JPMC sought IV's contentions that the patents-in-suit satisfy the written description requirement of 35 U.S.C. § 112:

**INTERROGATORY NO. 18**

> For each claim of each asserted patent, please identify the specific passages in the
> related specification which provide the written description required by 35 U.S.C.
> §112 para 1.

Ex. K at 14.  IV's Response, however, identified the ***entirety*** of the specifications, every figure,
and all the original claims for each patent-in-suit.  *Id.* at 14.  Likewise, IV's Supplemental
Response merely adds citations to materials outside of the specification—which are
nonresponsive since the Interrogatory specifically requests the IV to identify passages "in the []
specification"—while continuing to cite the entirety of the specifications, Figures and original
claims of the patents-in-suit.  *Id.* at 14–15.  Contrary to JPMC's request, IV's response fails to
identify the ***specific passages*** of the specification which allegedly provide a written
description—let alone a claim-by-claim basis.

This information is highly relevant to JPMC's invalidity case, as the written description
and specification of each patent-in-suit must fully support the terms and phrases used in the
patent claims.  35 U.S.C. § 112 ¶ 1.  It is proper for JPMC to seek such information through an
interrogatory, and it is entitled to a proper response.  *Golden Trade, S.r.L. v. Lee Apparel Co.*,
143 F.R.D. 512, 513–14 (S.D.N.Y. 1992) (ordering plaintiffs "to provide a complete set of
answers to interrogatories" asking plaintiffs to "identify, for each claim element in the contested
patent, the corresponding support found in the description portion of the patent's specifications").

JPMC also sought IV's identification of the specific portions of the specification that
satisfy the requirements of 35 USC § 101:

**INTERROGATORY NO. 19**

For each claim of each asserted patent, please identify, any "additional features"
which ensure 'that the claim is more than a drafting effort designed to monopolize
[an] abstract idea" as required by the second step of the analytical framework
articulated in Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U. S. ___,
132 S. Ct. 1289 (2012). As part of your identification, please: (a) identify the
relevant claim text; (b) identify what a person of ordinary skill in the art would

understand that feature to be and (c) explain how the feature brings the asserted claim within the scope of 35 USC §101.

Ex. K at 15–16.  IV's Response, however, was non-responsive as it recites the claim limitations verbatim, accompanied by formulaic recitations that "[a] person of ordinary skill in the art would understand these features to be a new and useful machine, which falls squarely within the scope of 35 U.S.C. § 101."  *Id.* at 28.  IV's Supplemental Response was likewise unresponsive as it simply added a reservation of rights to rely on any arguments it makes during the IPR and incorporated those arguments by reference.  *Id.* at 38.

JPMC is entitled to IV's responses on the validity or invalidity of the patents-in-suit. *LifeNet Health v. LifeCell Corp.*, No. 2:13-CV-486, 2014 WL 4162113, at *5 (E.D. Va. Aug. 19, 2014) (ordering the plaintiff to answer interrogatories seeking "Plaintiffs position on the [] Patent's validity or invalidity"); *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.,* No. 1:05-CV-01411, 2010 WL 716306, at *3 (E.D.Cal. Mar. 2, 2010) (requiring a patentee to answer interrogatories directed towards its validity theories where the defendant had asserted a specific invalidity defense).  IV has not identified any ***specific feature*** that brings the claims within the scope of patentable subject matter as adduced by *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012) (holding that a process claiming a law of nature must claim "additional features" to be patentable subject matter).  Further, IV should be compelled to supplement its answers to this interrogatory immediately, as JPMC intends to move for summary judgment that certain claims of the patents-in-suit are invalid under Section 101, and IV's response to this interrogatory would assist this Court in deciding JPMC's dispositive motion. *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 96 CIV. 2717, 1997 WL 232316, at *1–4 (S.D.N.Y. May 7, 1997) (reaffirming its holding on summary judgment that the plaintiff "would be bound by the theory of novelty which it articulated in an interrogatory response," that had

18

been compelled by the magistrate judge prior to summary judgment briefing).   As such, IV

should be compelled to provide a meaningful response to JPMC's Interrogatory No. 19.

   **B.**   **IV Should Be Compelled to Answer JPMC's Second Set of Interrogatories Nos. 22, 23, and 24.**

IV has not provided a response to three of JPMC's Second Set of Interrogatories.   ***First***,

JPMC requested that IV identify non-infringing alternatives for the accused products:

**INTERROGATORY NO. 22**

Please identify any acceptable non-infringing alternatives of which you are aware for each Accused Product and, for each of the non-infringing alternatives identified by JPMC in response to your Interrogatory Number 20, please state whether you agree that the identified product or service was and/or is an acceptable non-infringing alternative and, if you contend it is or was not, explain why the product or service is and/or was not an acceptable non-infringing alternative (both as of the date of your response and as of the date of the hypothetical negotiation), describe all facts that support your contention, identify all of the documents on which you intend to rely to support that contention, and identify all witnesses with knowledge of those facts.

Ex. F at 6–7.   Non-infringing alternatives are properly considered in a hypothetical negotiation

context when calculating patent damages.   *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d

1302, 1311–12 (Fed. Cir. 2002) (vacating reasonable royalty award because patentee's evidence

of a reasonable royalty failed to account for non-infringing alternatives).   IV's response stated

that it was not aware of any acceptable non-infringing alternatives, and reserved the right to

supplement after JPMC identified non-infringing alternatives in response to IV's Interrogatory

No. 20.   Ex. F at 7.   JPMC provided IV with its preliminary identification of non-infringing

alternatives the following day, yet IV refused to supplement Interrogatory No. 22 even with

respect to those identified alternatives.[10]   Ex. G.   IV's refusal is inconsistent with its obligations

under Federal Rule 26(e)(1), and pays lip-service to its own response.   IV is now aware of non-

---

[10]   IV objected to Interrogatory No. 22 because JPMC had not identified non-infringing alternatives in response to IV's Interrogatory No. 20.   IV's objection is moot.

infringing alternatives, and it should be compelled to provide JPMC with its response. *Cornell Research Found., Inc. v. Hewlett Packard Co.*, No. 5:01-CV-1974, 2005 WL 5955005, at *5 (N.D.N.Y. Sept. 26, 2005) (court approving of interrogatory seeking identification of non-infringing alternatives); *Asus*, 2009 WL 153161, at *2 (same).

**Second**, JPMC propounded Interrogatory No. 23 requesting that IV identify the smallest saleable unit of the Accused Products:

### INTERROGATORY NO. 23

For each Accused Product or service, please identify the smallest saleable unit which embodies each claim asserted against it and explain why there is no smaller unit, including-- for each instrumentality which was sold to JPMC and makes up a part of the Accused Product or service-- a detailed explanation of why the instrumentality sold to JPMC is not itself the smallest saleable unit and the identity of the claim limitation(s) that you contend the instrumentality does not embody.

Ex. F at 7.  IV improperly refused to answer this interrogatory before expert reports are due.  *Id.* at 7–8.  As an initial matter, where, as here, components of a multi-component product are accused of infringement, it is necessary to apportion damages based on the sale of the smallest salable unit.  *Quanta*, 694 F.3d at 67 ("[I]t is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'") (internal citation omitted). IV's identification of the smallest salable unit is relevant to its alleged damages and IV cannot refuse to answer on the basis that its expert will opine on the issue at a later date—a party must answer interrogatories when it is in a position to do so.  Fed. R. Civ. P. 33(b)(3); *Green v. New York City Dep't of Corr. Servs.*, No. 94-CV-6772, 1996 WL 3951, at *3 (S.D.N.Y. Jan. 4, 1996) (finding an interrogatory response to provide information at a later time to be an "of course unacceptable" attempt to extend the time to respond to the interrogatories); *County of Santa Clara v. Astra USA, Inc.*, No. 05-CV-3740, 2009 WL 2868428 at *2–*3 (N.D. Cal Sept. 3, 2009) (finding that refusing to answer interrogatories before expert reports are due "is

inconsistent with the spirit of the Federal Rules of Civil Procedure, which encourage early disclosure and supplementation where necessary."). To the extent IV knows the smallest salable unit, it should be compelled to state *now* what it is.

*Third*, IV failed to provide any response whatsoever to JPMC's Interrogatory No. 24. Ex. F at 8–9. Interrogatory No. 24 seeks discovery on IV's proposed constructions of the patents-in-suit during *inter-partes* review, including how its proposed constructions there differ from the agreed or stipulated constructions in this litigation. *Id.* at 8. IV's statements to the PTO are relevant to whether the claims should be subject to supplemental construction. *Beneficial Innovations, Inc. v. Blockdot, Inc.*, No. 2:07-CV-263, 2010 WL 2246291, at *1–*4 (E.D. Tex. June 3, 2010) (modifying original claim construction in light of patentee's remarks and arguments to the PTO during co-pending reexamination). IV must provide a response to JPMC's Interrogatory No. 24. Fed. R. Civ. P. 33(b)(3).

## V.   CONCLUSION

For the foregoing reasons, JPMC respectfully requests that the Court compel IV to immediately produce (1) documents listed on its privilege log that do not identify an attorney involved in the communication; (2) documents that relate to acquisition and licensing of the patents-in-suit; and (3) documents listed on its privilege log that were shared with third parties, including documents that were created by or shared with outside analysts and evaluators. JPMC also requests this Court order IV to supplement its responses to JPMC's Interrogatory Nos. 1, 3, 5, 7, 18, 19, 22, 23 and 24.

Dated: October 7, 2014                 Respectfully Submitted,

/s/ Brent P. Ray

**KIRKLAND & ELLIS LLP**
Brent P. Ray
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2200
Facsimile: (312) 862-2200
brent.ray@kirkland.com

Kenneth R. Adamo
601 Lexington Avenue
New York, NY 10022-4611
Telephone: (212) 446-4839
Facsimile: (212) 446-4900
kenneth.adamo@kirkland.com

**DURIE TANGRI LLP**
Clement S. Roberts
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666
Facsimile: (415) 236-6300
croberts@durietangri.com

**DONTZIN NAGY & FLEISSIG LLP**
Matthrew S. Dontzin
Tibor L. Nagy, Jr.
Rachel K. Clapp
980 Madison Avenue
New York, NY 10075
Telephone: (212) 717-2900
Facsimile: (212) 717-8088
mdontzin@dnfllp.com
tibor@dnfllp.com
rclapp@dnfllp.com

*Attorneys for Defendants / Counterclaim-Plaintiffs*