## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTELLECTUAL VENTURES II LLC, a limited liability corporation,<br><br>    Plaintiff,<br><br>v.<br><br>JP Morgan Chase & Co. et al,<br><br>    Defendants. | **Case No. 13 Civ. 3777 (AKH)**<br><br>**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR SECOND OMNIBUS MOTION TO COMPEL**<br><br>**ECF Case** |

**TABLE OF CONTENTS**

**Page**

I. Introduction .................................................................................................................. 1

II. **IV Should Be Compelled To Produce Documents Improperly Withheld As Privileged** ................................................................................................................... 2

    A. IV's Revisions to Its Email Log Are Insufficient to Show That The Withheld Emails Satisfy The Elements of The Attorney-Client Privilege ............ 2

        1. JPMC Cannot Properly Evaluate IV's Updated Claims of Privilege ......... 2

        2. IV's Attempt to Shield Documents As Nonresponsive Contradicts IV's Earlier Admissions That These Documents Are Relevant, and is a Transparent Attempt to Avoid Production ............................................. 4

    B. IV's Communications Concerning Acquisitions and Licensing Contain Business Advice, Not Legal Advice ....................................................................... 5

    C. IV's Communications Created By Or Shared With Third Parties Cannot Be Withheld As Privileged ...................................................................................... 6

III. IV Should Be Compelled to Provide Complete Responses To JPMC's Interrogatories Nos. 1, 3, 5, 7, 18, 19, 23 and 24 .................................................................. 6

    A. Interrogatory No. 1 – IV's List of Accused Products ............................................. 6

    B. Interrogatory No. 3 – IV's Conception and Reduction to Practice Dates ............... 7

    C. Interrogatory No. 5 – IV's First Awareness of Accused Products ......................... 8

    D. Interrogatory Nos. 7 and 23 – Bases for IV's Claim of Damages .......................... 9

    E. Interrogatory Nos. 18 and 19 – IV's Rebuttal to JPMC's Invalidity Proofs......... 11

    F. Interrogatory No. 24 – IV's Claim Construction Inconsistencies at the PTO ..................................................................................................................... 11

IV. Conclusion ................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
   960 F.2d 1020 (Fed. Cir. 1992) ................................................................................................ 9

*Bonutti Skeletal Innovations LLC v. Linvatec Corp.*,
   No. 12-cv-1379, 2014 WL 186123 (M.D. Fla. Jan. 16, 2014) ................................................ 12

*Breeland v. Bethlehem Steel Co.*,
   179 F. Supp. 464 (S.D.N.Y. 1959) .......................................................................................... 11

*CIAS, Inc. v. Alliance Gaming Corp.*,
   504 F.3d 1356 (Fed. Cir. 2007) ............................................................................................... 13

*Diagnostics Sys. Corp. v. Symantec Corp.*,
   No. 06-cv-1211, 2008 WL 9396387 (C.D. Cal. Aug. 12, 2008) ............................................... 5

*Gropper v. David Ellis Real Estate, L.P.*,
   No. 13-cv-2068, 2014 WL 518234 (S.D.N.Y. Feb. 10, 2014) .......................................... 10, 12

*In re Methyl Tertiary Butyl Ether Products Liab. Litig.*,
   No. 00-cv-1898, 2014 WL 494522 (S.D.N.Y. Feb. 6, 2014) .................................................... 7

*In re Yamamoto*,
   740 F.2d 1569 (Fed. Cir. 1984 ................................................................................................ 13

*IP Innovation L.L.C. v. Sharp Corp.*, 219 F.R.D. 427 (N.D. Ill. 2003) ........................................ 12

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
   298 F.R.D. 145 (S.D.N.Y. 2014) ............................................................................................. 10

*Linde v. Arab Bank, PLC*,
   No. 04-cv-2799, 2012 WL 957970 (E.D.N.Y. Mar. 21, 2012) ............................................... 12

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ............................................................................................... 11

*Lunts v. Rochester City School Dist.*,
   No. 07-CV-6272, 2011 WL 108913 (W.D.N.Y. Jan. 12, 2011) ............................................... 4

*Monsanto Co. v. E.I. Du Pont De Nemours and Co.*,
   No. 09-cv-686, 2012 WL 27936 (E.D. Mo. Jan. 5, 2012) ...................................................... 12

*Nagler v. Admiral Corp*,
   167 F. Supp. 413 (S.D.N.Y. 1958) ............................................................................................ 8

*S.E.C. v. Yorkville Advisors, LLC*,
   300 F.R.D. 152 (S.D.N.Y. 2014) ............................................................................................... 3

*SanDisk Corp. v. Round Rock Research LLC*,
   No. 11-cv-05243, 2014 WL 691565 (N.D. Cal. Feb. 21, 2014) ............................................... 6

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Switch Commc'ns Grp. v. Ballard*,
   No. 11-cv-285, 2011 WL 3957434 (D. Nev. Sep. 7, 2011) ........................................................ 11

*Wechsler v. Hunt Health Sys., Ltd.*,
   No. 94-cv-8294, 1999 WL 672902 (S.D.N.Y. Aug. 27, 1999) ............................................. 8, 13

I.      INTRODUCTION

IV offers no legitimate reason why the communications JPMC seeks from IV's email log should be withheld.  First, although IV updated certain entries on its email log to baldly assert that they were prepared at the direction of an attorney *after* JPMC filed the instant motion, IV still provided no evidence suggesting that these communications were actually sent by or received by an attorney.  Second, IV's last-ditch effort to shield some communications as "nonresponsive" should not be countenanced, given that IV already admitted — by including them on its email log in the first place — that these communications are indeed relevant and responsive.  Third, IV provides no legitimate basis for withholding communications relating to licensing and acquisitions, which contain *business* advice related to IV's core patent acquisition and licensing functions.  Finally, IV argues that communications created by or shared with third parties are privileged because these third parties are agents of IV.  Yet the very contracts that IV relies upon state just the reverse: these third parties are **not** agents of IV, and therefore privilege does not attach.

Regarding JPMC's interrogatories, IV has steadfastly (and without any valid excuse) refused to confirm which products it has accused of infringement, why the patents-in-suit are entitled to the conception and reduction to practice dates alleged by IV, why the patents-in-suit are allegedly valid in light of JPMC's invalidity contentions, and the extent of IV's alleged damages, if any.  JPMC's interrogatories are not premature:  the Court ordered the parties complete written discovery by September 30.  Dkt. No. 168.  And, IV also cannot avoid its obligations to answer these interrogatories through unsupported accusations that JPMC has failed to provide enough discovery, since JPMC has fully complied with its own discovery obligations and, in any event, the interrogatories call for information related to IV's claims that IV should be able to provide independent of any discovery provided by JPMC.

## II. IV SHOULD BE COMPELLED TO PRODUCE DOCUMENTS IMPROPERLY WITHHELD AS PRIVILEGED

### A. IV's Revisions to Its Email Log Are Insufficient to Show That The Withheld Emails Satisfy The Elements of The Attorney-Client Privilege

In response to JPMC's argument that IV failed to identify a single attorney involved in nearly 900 of the communications listed on IV's email log, IV either (i) withdrew its improper claim of privilege and produced the documents to JPMC, (ii) removed listings on the basis that they were somehow "nonresponsive," or (iii) provided JPMC with an "updated" version of the log that adds hundreds of unverifiable allegations that an attorney was somehow involved in the preparation of the listed emails. *See* Dkt. No. 257-2. Significant problems remain regarding IV's email privilege log.

#### 1. JPMC Cannot Properly Evaluate IV's Updated Claims of Privilege

Only after JPMC filed this motion, IV revised the privilege descriptions for nearly 200 of the communications to include an attorney whose advice was supposedly requested or provided in the communication. *See* Ex. N.[1,2] IV may have figured this would "fix" the issue, but it does not.

IV did not make any additions to the list of senders or recipients on these communications or give any indication that the identified attorneys sent or received the communications. *Compare* Dkt. 206-9 with Ex. N. Nor did IV provide any evidence to suggest that these communications were made at the identified attorney's direction. *See* Ex. N. IV's claims of privilege remain just as implausible as before IV updated its email log. For example,

---

[1] Exhibit N contains the entries from IV's Updated Email Log (Day Decl., Ex. B) for which IV provided an updated privilege description.

[2] Unless otherwise noted, all exhibits referred to herein are attached to the Declaration of Brent P. Ray in Further Support of Defendants' Second Omnibus Motion to Compel, filed concurrently herewith.

IV claims privilege over a communication from Chris Spadea, IV's Theme Team Lead, to Thomas Choi, an engineer at IV.  Ex. N, at DocId No. 197295.  No other individual, attorney or otherwise, is identified as being a recipient of this communication.  Ex. N, at DocId No. 197295.  Yet, in its description of the communication's privilege, IV claims that this is an "[e]mail communication requesting legal advice of Cris Leffler[] regarding licensing."  Ex. N, at DocId No. 197295.  IV provides no evidence to suggest that Cris Leffer, an attorney at IV, actually received this communication, or otherwise had anything to do with it.

IV's updated email log is riddled with similar entries where IV claims that a communication is "requesting legal advice of" a particular attorney, yet that attorney is nowhere to be found among the list of recipients on that communication.  *See, e.g.*, Ex. N at Doc Id Nos. 197289, 197295, 198694, 286811, 289734, 341929, 316752, 316756, 316765.

Merely updating document descriptions to include an attorney's name is not sufficient to allow JPMC to properly evaluate IV's claims of attorney-client privilege, particularly when the peripheral information on the log appears to contradict any suggestion that an attorney was involved with the communication.  IV has not offered the required specific and detailed explanation showing that these particular documents are privileged, nor has it shown that each element of the attorney-client privilege is met.  The merits of IV's privilege claims may (against the known odds) be just, but JPMC cannot ascertain this in view of the information contained in IV's log.  It is IV's burden to prepare a log that adequately sets forth the bases of privilege, not JPMC's, and certainly not the Court's, who should not be burdened with *in camera* review of nearly 200 documents because IV failed to comply with its discovery obligations.  *See S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 157 (S.D.N.Y. 2014).

3

Without such information, IV's claims of privilege are unsupported, and JPMC is entitled to discover these documents. *Lunts v. Rochester City School Dist.*, No. 07-CV-6272, 2011 WL 108913, at *1 (W.D.N.Y. Jan. 12, 2011) (finding a privilege log that included "the dates of the e-mails, who the e-mails are to and from, and that they are protected by the attorney-client privilege" to be insufficient).

### 2. IV's Attempt to Shield Documents As Nonresponsive Contradicts IV's Earlier Admissions That These Documents Are Relevant, and is a Transparent Attempt to Avoid Production

IV's eleventh-hour removal of close to 70 documents from its log as "nonresponsive" is not only belied by IV's earlier position that such documents are relevant and responsive to this case, but it is also an affront to the discovery process itself, as IV desperately seeks to avoid production of relevant, non-privileged documents from its email collection.[3]

IV and JPMC established an email discovery protocol whereby each party identified search terms to be applied to specific custodians' email files. IV agreed to produce all non-privileged emails that hit on these search terms for each custodian. Ex. P. Notwithstanding this agreement, after IV applied the search terms to those files, IV then reviewed all of the emails that hit on the terms to confirm responsiveness of the documents prior to production. Ex. Q. IV's counsel informed JPMC that this review would eliminate "a significant number of irrelevant documents." Ex. P. For any remaining communication that was responsive, yet privileged, IV identified that communication on its email log to JPMC. As a result of this protocol, each of the close to 70 communications identified in Exhibit O must have: (1) hit on JPMC's proposed relevant search terms; and (2) been determined to be responsive by an IV attorney.

---

[3] Exhibit O contains the entries from IV's Updated Email Log (Day Decl., Ex. B) that IV now claims are nonresponsive.

4

IV cannot now legitimately claim that these documents are nonresponsive after admitting that these communications passed not just one, but two tests for responsiveness.  IV made *no claim* that these documents were "nonresponsive" until *after* JPMC filed the instant motion seeking production of these documents.  Furthermore, IV provided no explanation whatsoever as to why these communications were originally deemed responsive and yet are now suddenly "nonresponsive."

IV's attempt to shield these communications as nonresponsive should be seen for what it is: a last-ditch effort by IV to withhold relevant, non-privileged documents from production to JPMC.  IV's transparent gambit should not be countenanced.

**B.    IV's Communications Concerning Acquisitions and Licensing Contain Business Advice, Not Legal Advice**

Documents relating to acquisitions of the patents-in-suit constitute business advice—*not* legal advice—regardless of whether the communications and documents were made by or under the guidance of counsel.  *See* Dkt. No. 234 at 10-12.  IV, in its Opposition, makes no attempt to respond to JPMC's claim that communications relating to *licensing* should not be protected by attorney-client privilege.  *See* IV Opp. at 6.  Particularly where, like IV, an entity's primary business function is the acquiring and licensing of patents, courts have held that documents and communications relating to those business functions are not protected by attorney-client privilege.  *Diagnostics Sys. Corp. v. Symantec Corp.*, No. 06-cv-1211, 2008 WL 9396387, at *5-7 (C.D. Cal. Aug. 12, 2008) (finding that where non-practicing entity's main business objectives were to license and acquire patents, documents and communications created to further those business goals were not protected by attorney-client privilege);  *SanDisk Corp. v. Round Rock Research LLC*, No. 11-cv-05243, 2014 WL 691565, at *3 (N.D. Cal. Feb. 21, 2014) (finding that documents relating to non-practicing entity's analysis of potential licensing targets were not

protected by privilege because they were created for a business purpose). Thus, IV's attempt to shield licensing and acquisition-related documents through the attorney-client privilege is improper.

    **C.    IV's Communications Created By Or Shared With Third Parties Cannot Be Withheld As Privileged**

IV claims that communications with third-party independent contractors are privileged because those independent contractors are agents of IV's. IV Opp. at 7-8. As JPMC showed in its Reply to its First Omnibus Motion to Compel, the contracts with these third parties clearly state that these independent contractors are ***not agents*** of IV. *See* Dkt. No. 234, 13-14.

IV's citation to several additional contracts does not change the outcome, and instead refutes any notion of agency. *See* Dkt. No. 256, Ex. B at Section 5, Ex. C at Section 5, Ex. D at Section 5, Ex. E at Section 5, Ex. F at Section 5, Ex. G at Section 8; Ex. H at Section 5, Ex. I at Section 5, Ex. J at Section 5, Ex. K at Section 5, Ex. L at heading, Ex. M at Section 6.1, Ex. N at ¶2, Ex. O at Section 8.a., Ex. P at Sections (4)(a) and (4)(b). As a result of this abject failure of proof, IV's reliance upon *Upjohn*, *Schwimmer* and *CSC* is unfounded. IV Opp. at 7.

Instead of agents, these third-party analysts were independent contractors of IV. To save its privilege claim, IV was therefore required to show that these third parties are the functional equivalent of IV employees. *See* Dkt. No. 234, 14-16. As before, IV failed to do so. *See* Dkt. No. 234, 14-16. Any privilege that might have existed in the documents shared with third parties has now been waived, and the documents should be produced.

**III.    IV SHOULD BE COMPELLED TO PROVIDE COMPLETE RESPONSES TO JPMC'S INTERROGATORIES NOS. 1, 3, 5, 7, 18, 19, 23 AND 24**

    **A.    Interrogatory No. 1 – IV's List of Accused Products**

JPMC does not dispute that infringement contentions, ***when done correctly***, provide a defendant proper notice of the plaintiff's claim of infringement, and can therefore take the place

6

of an interrogatory requesting the same information. Unfortunately, IV's infringement contentions here fail miserably in this regard. Dkt. No. 224 at 4–5, 7. Any argument by IV then that JPMC's interrogatory is duplicative, or that IV's response isn't necessary because JPMC understands the scope of the accused products, is flatly wrong. IV Opp. 8–9.

IV's citation to *Yama Capital* is misplaced as it stands for the proposition that infringement contentions, when **properly** prepared, can alleviate the need for interrogatories. Such is not the case here. Indeed, IV's infringement contentions fail, in many instances, to identify specific products, and rather identify entire lines of JPMC's business. JPMC Mot. at 11. JPMC does not seek duplicative information, but instead seeks more specific information than that provided in IV's infringement contentions.

Despite IV's vague contentions, JPMC complied with IV's overreaching document requests. *See also* Dkt. No. 232 at 2 (noting JPMC's document collection efforts undertaken despite IV's expansive accusations). Now it is IV's turn to specifically identify the products accused of infringement. *In re Methyl Tertiary Butyl Ether Products Liab. Litig.*, No. 00-cv-1898, 2014 WL 494522, at *2 (S.D.N.Y. Feb. 6, 2014) ("Contention interrogatories are treated as judicial admissions which usually estop the responding party from later asserting positions not included in its answers."). IV's continuing failure to do so unreasonably inflates the already significant costs of this litigation and prejudices JPMC's ability to defend itself.

**B.    Interrogatory No. 3 – IV's Conception and Reduction to Practice Dates**

According to IV, JPMC can obtain the omitted conception and reduction to practice information by reviewing thousands of documents, without any explanation from IV as to how these documents support IV's alleged dates.[4] IV misses the point: JPMC is entitled to

---

[4] As an initial matter, IV's Opposition is factually incorrect, at least for the reason that IV has not provided a reduction to practice date for the '694 patent. JPMC Mot. Ex. K at 6–8.

7

understand why IV contends that the patents-in-suit are entitled to IV's alleged conception and reduction to practice dates and the facts upon which IV intends to rely to support those dates. JPMC Mot. at 12. IV does not dispute that its response is deficient in this regard.

The fact that IV and JPMC are in possession of the same third party document production does not alleviate IV from providing a complete, substantive response identifying IV's contentions. *See* JPMC Mot. at 12–14; *see also Wechsler v. Hunt Health Sys., Ltd.*, No. 94-cv-8294, 1999 WL 672902, at *2 (S.D.N.Y. Aug. 27, 1999) (distinguishing evidentiary value of interrogatory responses to other forms of discovery); *cf. Nagler v. Admiral Corp*, 167 F. Supp. 413, 416 (S.D.N.Y. 1958) (holding that plaintiff's interrogatory response identifying records was insufficient because the plaintiff has "the burden of informing the defendants fully as to the particulars of their claims in the detail which the interrogatories require").

IV's attempt to fault JPMC for "cit[ing] to cases from other districts for the proposition that it is inappropriate for IV to point to a document production" falls flat. IV Opp. at 10. Contrary to IV's misleading citation, the relevant paragraph of JPMC's motion relied ***exclusively*** on the Federal Rules and cases from this district.[5] JPMC Mot. at 13.

### C. Interrogatory No. 5 – IV's First Awareness of Accused Products

Here, IV originally provided an evasive answer regarding the time period during which IV and its outside counsel conducted an investigation of JPMC's alleged infringement. JPMC

---

5   IV also suggests that it is relieved from providing a complete response because the inventors have never worked for IV. IV Opp. at 9–10. This is incorrect. IV is in possession of the inventors' document production, and has identified documents from these productions as supporting IV's alleged dates of conception and reduction to practice. Therefore, IV is in possession of responsive information regarding its conception and reduction to practice date contentions, and should be required to provide it to JPMC. *See e.g.*, JPMC Mot., Ex. K at 6–8; *Nagler*, 167 F. Supp. at 416 ("The plaintiffs have not only the burden of establishing their case, but the burden of informing the defendants fully as to the particulars of their claims in the detail which the interrogatories require.").

8

Mot. at 14–15. Conceding that its original response was insufficient, IV represents — for the first time in its Opposition — the dates when IV first became aware of JPMC's alleged infringement. IV Opp. at 10–11. IV should supplement its interrogatory response with this information. Furthermore, this interrogatory seeks more, including the dates that IV first became aware of each "Accused Instrumentality," *i.e.*, the technology accused of infringement in this action, whether as used by JPMC or otherwise. IV has not provided that information. Yet, it is clearly relevant to JPMC's laches defense, which can be proven by demonstrating that IV knew **or should have known** of JPMC's alleged infringement. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (holding that the period of delay for measuring laches is "from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit"). When IV first knew of the accused technologies, and their alleged infringement of the patents-in-suit, even if **before** it specifically started investigating JPMC, is at least relevant to whether IV **should have known** of JPMC's alleged infringement for laches purposes.

      **D.**      **Interrogatory Nos. 7 and 23 – Bases for IV's Claim of Damages**

IV contends that these interrogatories are premature. IV Opp. at 11. This argument is belied by the fact that IV served its own contention interrogatory on August 28 regarding damages. Dkt. No. 234 at 4–5 (explaining why JPMC's interrogatories are not premature). IV also ignores the Court's Order requiring that written discovery be completed by September 30 (Dkt. No. 168), and this District's Local Rules which allow for early damages-based contention interrogatories (*see* Local Rule 33.3(a)).

Regarding Interrogatory No. 7, IV contends that it does not need to respond because it is not satisfied with JPMC's document production or its interrogatory responses. IV Opp. at 11–12. JPMC, however, has satisfied its discovery obligations (*see generally* Dkt. No. 218, 245),

9

and, even if IV's complaints were legitimate—which they are not—IV cannot refuse to respond on this basis. *Gropper v. David Ellis Real Estate, L.P.*, No. 13-cv-2068, 2014 WL 518234, at *3 (S.D.N.Y. Feb. 10, 2014) ("[O]ne party's noncompliance with discovery requirements does not excuse the other's failure to comply. Each party's obligation is independent, and any motion to compel will be determined on its own merits."); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 145, 148 (S.D.N.Y. 2014) ("[I]t is well-established that a party cannot unilaterally refuse to fulfill its discovery obligations as retaliation for another party's discovery violations.").

Regarding Interrogatory No. 23, IV refuses to supplement its response on the basis that JPMC has not produced financial documents and it contends that it "does not know the smallest salable unit." IV. Op at 13. These arguments ring hollow. First, the burden to prove damages rests with IV, not JPMC. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) ("The burden of proving damages falls on the patentee."). Also, IV cannot refuse to answer interrogatories because it is not satisfied with JPMC's document production, as discussed above. Likewise, IV's response that it "does not know" the smallest salable unit is a non-starter — it clearly *does* know what is the smallest saleable unit, since it has identified the allegedly infringing technology in its *final* infringement contentions served on September 30, and in any event it should have crystalized its position when responding to JPMC's interrogatories. *Breeland v. Bethlehem Steel Co.*, 179 F. Supp. 464, 467 (S.D.N.Y. 1959) ("The mere statement of lack of knowledge by plaintiffs, of the facts sought by the defendant's interrogatories . . . is certainly insufficient.").

JPMC is entitled to know what IV will claim is the smallest salable unit so that it can develop its damages case during the remainder of fact discovery. *Switch Commc'ns Grp. v.*

*Ballard*, No. 11-cv-285, 2011 WL 3957434, at *9 (D. Nev. Sep. 7, 2011) ("Although [plaintiff's] alleged damages may ultimately be based on the opinions of expert witnesses, this does not justify it in not providing any information regarding its alleged damages.").

### E. Interrogatory Nos. 18 and 19 – IV's Rebuttal to JPMC's Invalidity Proofs

Aside from citing distinguishable case law from other districts,[6] IV spends most of its Opposition alleging that it cannot respond to these interrogatories because JPMC's invalidity allegations are deficient. IV Opp. at 15–16. Yet JPMC's invalidity contentions comport with this District's Rules, and are not currently the subject of any motions. Once again, even if IV's complaints of deficiency were valid—which they are not—IV cannot refuse to respond to JPMC's interrogatories because JPMC allegedly has not complied with its discovery obligations. *Gropper*, 2014 WL 518234, at *3 ("[O]ne party's noncompliance with discovery requirements does not excuse the other's failure to comply."). And, the fact that JPMC bears the ultimate burden of proof on invalidity does not preclude JPMC from propounding interrogatories on this topic. *See Linde v. Arab Bank, PLC*, No. 04-cv-2799, 2012 WL 957970, at *2 (E.D.N.Y. Mar. 21, 2012) (holding contention interrogatories are not limited to issues on which the party bears the burden of proof).

### F. Interrogatory No. 24 – IV's Claim Construction Inconsistencies at the PTO

---

[6] In *Bonutti Skeletal Innovations LLC v. Linvatec Corp.*, the court analyzed the interrogatories at issue in view of that District's Guide on Discovery. No. 12-cv-1379, 2014 WL 186123, at *4 (M.D. Fla. Jan. 16, 2014) ("Interrogatory No. 16 is precisely the sort of contention interrogatory discouraged by the Middle District Discovery handbook."). The issue before the Court in *Monsanto* was whether the defendant timely supplemented its responses. *Monsanto Co. v. E.I. Du Pont De Nemours and Co.*, No. 09-cv-686, 2012 WL 27936 at *2 (E.D. Mo. Jan. 5, 2012) ("The Court concludes that Defendants timely disclosed the information contained within their Second Supplemental Objections and Responses to Monsanto's First Set of Interrogatories 7–8."). And, in *IP Innovation L.L.C. v. Sharp Corp.*, the court held an interrogatory was premature because the plaintiff sought to circumvent the court's scheduling order. 219 F.R.D. 427, 429–430 (N.D. Ill. 2003).

11

IV contends that its own representations to the PTO are irrelevant because a different legal standard applies in post-grant proceedings, JPMC has not moved for reconsideration, and JPMC can learn about IV's constructions from public filings. IV Opp. at 16–17. There is little doubt that this information is relevant, as the Federal Circuit has held that statements made to the PTO during re-examination — which applies the broadest reasonable construction standard — are relevant to claim scope. *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1362–63 (Fed. Cir. 2007) (limiting claims scope based on arguments made during reexamination); *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984) (affirming that the broadest reasonable interpretation standard applies in reexamination proceedings). And the fact that information may be publically available does not absolve IV of its obligation to provide a written response on this issue. *Wechsler*, 1999 WL 672902, at *2 (explaining that interrogatory responses are unlike from other vehicles of discovery); *see also* Dkt. No. 234 at 4–6.

## IV.   CONCLUSION

The Court should compel IV to immediately produce: (1) documents listed on its privilege log that do not identify an attorney involved in the communication; (2) documents that relate to acquisition and licensing of the patents-in-suit; and (3) documents listed on its privilege log that were shared with third parties, including documents that were created by or shared with outside analysts and evaluators. The Court should also order IV to supplement its responses to JPMC's Interrogatory Nos. 1, 3, 5, 7, 18, 19, 23 and 24.

Dated: October 23, 2014

                Respectfully Submitted,

                /s/ *Brent P. Ray*

**KIRKLAND & ELLIS LLP**
Kenneth R. Adamo
601 Lexington Avenue
New York, NY  10022-4611
Telephone:  (212) 446-4839
Facsimile:  (212) 446-4900
kenneth.adamo@kirkland.com

Brent P. Ray
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2200
Facsimile: (312) 862-2200
brent.ray@kirkland.com

**DURIE TANGRI LLP**
Clement S. Roberts
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:  (415) 362-6666
Facsimile:  (415) 236-6300
croberts@durietangri.com

**DONTZIN NAGY & FLEISSIG LLP**
Matthew S. Dontzin
Tibor L. Nagy, Jr.
Rachel K. Clapp
980 Madison Avenue
New York, NY  10075
Telephone:  (212) 717-2900
Facsimile:  (212) 717-8088
mdontzin@dnfllp.com
tibor@dnfllp.com
rclapp@dnfllp.com

*Attorneys for Defendants / Counterclaim-Plaintiffs*

13