```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   INTELLECTUAL VENTURES I LLC,
     ET AL.,
 4
                    Plaintiffs,
 5
              v.                             13 CIV 3777
 6
     JP MORGAN CHASE,
 7
                    Defendants.
 8
     ------------------------------x
 9
                                             New York, N.Y.
10                                           January 7, 2015
                                             10:15 a.m.
11
     Before:
12
                      HON. ALVIN K. HELLERSTEIN,
13
                                             District Judge
14
                             APPEARANCES
15
     DUNNEGAN & SCILEPPI LLC
16   BY:  WILLIAM DUNNEGAN
             -and-
17   LIEFF CABRASER, HEIMANN & BERNSTEIN
     BY:  PATRICIA DYCK
18
     DONTZIN NAGY & FLESSIG LLP
19       Attorneys for Defendant JP Morgan Chase
     BY:  TIBOR L. NAGY
20       JASON KOLBE

21   KIRKLAND & ELLIS LLP
         Attorneys for Defendant Citigroup
22   BY:  BENJAMIN A. LASKY
     KOLEY JESSEN P.C.
23       Attorneys for nonparty ACI Worldwide
     BY:  GREGORY C. SCAGLIONE
24

25
```

1
2              (In open court; case called)
3
4         MS. DYCK:  Patricia Dyck for Intellectual Ventures
5    with Bill Dunnegan.
6         THE COURT:  How do you do.
7         MR. DUNNEGAN:  Good morning, your Honor.
8         MR. SCAGLIONE:  Your Honor, Greg Scaglione, appearing
9    pro hac vice pending on behalf of ACI Worldwide.
10        MR. NAGY:  For defendants, Tibor Nagy.  With me is
11   Jason Kolbe and also Benjamin Lasky.
12        THE COURT:  How do you do, all.
13        MR. NAGY:  Good morning, Judge.
14        MR. SCAGLIONE:  Good morning.
15        THE COURT:  Ms. Dyck, why do you want this
16   information?  Everybody sit except Ms. Dyck.
17        MS. DYCK:  Your Honor, we want this information
18   because it is important for us to understand how the ACI
19   products interface with other products within JPMC's system
20   such as the HP Atalla product as well as HP Guardian and other
21   programs that JPMC uses.
22        THE COURT:  Why do you care?
23        MS. DYCK:  We care because, first of all, for the '409
24   patent the contentions are directed to JPMC's payment
25   processing system, and this product is part of its payment

1     processing system.
2             THE COURT:  So what?
3             Either what J.P. Morgan uses infringes or not.  Why do
4     you care what ACI does.
5             MS. DYCK:  ACI's documents describe how its product
6     works, and JPMC uses its product.
7             THE COURT:  I don't understand.  This is an
8     infringement action against J.P. Morgan.
9             MS. DYCK:  And J.P. Morgan Chase uses ACI's products
10    and in order --
11            THE COURT:  Do you allege those products are
12    infringing?
13            MS. DYCK:  Yes.
14            THE COURT:  You do?
15            MS. DYCK:  Yes.
16            THE COURT:  That is why you need it.
17            MS. DYCK:  That is why we need it.
18            THE COURT:  OK.  Thank you.
19            I will come back to you if I need to.
20            So who is arguing.  Mr. Scaglione?
21            MR. SCAGLIONE:  Yes, your Honor.
22            THE COURT:  OK.  So I'm told it's relevant.  Do you
23    challenge that?
24            MR. SCAGLIONE:  I do, your Honor.
25            THE COURT:  Why is it not relevant?

1              MR. SCAGLIONE:  For several reasons:  First, your
2     Honor, the information that we have is that they have issued a
3     document request to J.P. Morgan.
4              THE COURT:  I'm sorry.  You are from Omaha.
5              MR. SCAGLIONE:  Yes, your Honor.
6              THE COURT:  Welcome to the Court.
7              MR. SCAGLIONE:  Thank you very much.
8              THE COURT:  I didn't mean to be so brusque.  I should
9     put on my nice Eastern side to welcome a Midwesterner.
10             MR. SCAGLIONE:  I am afraid I brought the cold weather
11    with me, your Honor.
12             THE COURT:  I am not blaming you.
13             MR. SCAGLIONE:  I'm sorry for that.
14             THE COURT:  I'm blaming Canada.
15             MR. SCAGLIONE:  The irrelevancy, your Honor, is
16    demonstrated in a couple of aspects:  One, we have come forward
17    with a sworn affidavit from our product developer on the
18    products that we've licensed to J.P. Morgan and attempted to
19    explain to Intellectual Ventures that the '409 patent deals
20    with an encryption.
21             That is not the security we use.  We still use
22    passwords and user IDs, your Honor.  We have explained that to
23    them, that our method has nothing do with encryption.
24             THE COURT:  You may be right, but as a poor judge how
25    would I know?  They feel that they need to understand maybe

1    even by contrast.  It is very hard to argue against relevance
2    once a credible statement is made in order to show relevance.
3            MR. SCAGLIONE:  I challenge the assumption that there
4    has been a credible statement made.  We have looked at their
5    patent infringement --
6            THE COURT:  You are saying the statement has been
7    made, but it is not credible.
8            MR. SCAGLIONE:  Correct.
9            They have not backed it up with any evidence, your
10   Honor.  There is no evidence before you on this motion
11   submitted by Intellectual Ventures.  There's two sworn
12   statements submitted by ACI Worldwide.
13           We have also looked at their patent contentions.
14   There are three points I have made.  The most relevant one
15   shows that our product doesn't use any of the techniques
16   described in their patent.  And they have not come forward with
17   one piece of evidence, your Honor, and it's their burden to
18   show discoverability.
19           THE COURT:  What is a good way of testing your
20   contention and Ms. Dyck's contention.
21           MR. SCAGLIONE:  To me, your Honor, there are three
22   ways, and they have already gotten one.  One is a sworn
23   statement from our product person.  They now have that.  So
24   they have achieved some level of discovery.
25           THE COURT:  What about secondly.

1            MR. SCAGLIONE:  Secondly, they can get directly from
2    J.P. Morgan how their system works on the HP NonStop.
3            Thirdly, they are looking for, as best I can tell, an
4    explanation of how all these interact on the HP NonStop, and
5    some of the HP software.  How about going to Hewlitt-Packard
6    directly.  We are so collateral.
7            THE COURT:  How much cooperation do you think
8    Hewlitt-Packard will give to Intellectual Ventures.
9            MR. SCAGLIONE:  If they are attempting to understand
10   the HP Atalla software, why come to ACI just because our
11   software interfaces with it to get an explanation for how HP
12   Atalla works.  Why not start with HP Atalla.
13           THE COURT:  Let me ask you and ask Ms. Dyck if there
14   is an independent expert who can examine your product and
15   literature and the product and literature of Chase and
16   Intellectual Ventures' contention and advise the Court about
17   relevance?
18           MR. SCAGLIONE:  Your Honor, I think that would assist
19   the Court.  I don't think as a nonparty we should have bear any
20   of the expense of that.
21           THE COURT:  You have a stake in this.  This request
22   for Chase documents is an ordinary request in a discovery
23   program that involves millions of documents.  You would be
24   swept in but for your claim.  If you feel that there is some
25   potential damage to you, you are going to have to pay for it as

1    well as Intellectual Ventures.  I think you and Ms. Dyck's
2    client will have to share it.  The question is, can you find
3    such an expert.
4            MR. SCAGLIONE:  I am sure there are experts that could
5    assist in that analysis, your Honor.
6            MS. DYCK:  Your Honor, to clarify we have some
7    evidence of the relevance of these documents.
8            THE COURT:  I am not challenging that.  I am having
9    opposite contentions.
10           Look, ACI has valuable software.  It wants to protect
11   it.  The whole business of secrecy is such as to make people
12   worry when something gets out, even though it's getting out to
13   protected sources, we learn over and over again with military
14   codes that once something is shared, even with a person who has
15   a right to know and a need to know, the danger of the
16   information being compromised is much greater.
17           So I'm looking for a way to help me make a judgment.
18   Is this relevant or not?  If it is, it is going to have to be
19   produced.  If it isn't, I don't think I will want it produced.
20   But I can't make that determination, not at this stage anyway.
21           So my proposal to you is to put this over a short
22   period of time, you and Mr. Scaglione will come up with an
23   expert who will examine what is in contention and advise me.
24   It shouldn't be such an expensive endeavor.
25           You will share the expense.  Any expense will be paid

1    promptly.
2               MS. DYCK:  Yes, your Honor.
3               THE COURT:  OK.
4               Mr. Scaglione?
5               MR. SCAGLIONE:  I understand your ruling.
6               THE COURT:  I didn't make a ruling.
7               MR. SCAGLIONE:  Or your suggestion.
8               THE COURT:  I am suggesting.  If I have to make a
9    ruling, it is a different thing, but I am not making a ruling.
10              MR. SCAGLIONE:  I understand.  We will explore that
11   and get back to you, hopefully with a report that we can put
12   into evidence and that can you read and consider.
13              THE COURT:  OK.  What is a good time frame, Ms. Dyck?
14              MS. DYCK:  Your Honor, if I may I just wanted to point
15   out that JPMC has agreed that it's relevant in its documents
16   that it sent to ACI.
17              THE COURT:  It doesn't care.  It is a licensee.  It is
18   not an exclusive licensee, so it doesn't care.
19              MS. DYCK:  A reasonable time.
20              MR. NAGY:  Your Honor --
21              THE COURT:  You do care?  I'm sorry.
22              MR. NAGY:  It is not so much that we don't care.  It
23   is that we are caught in the middle.  I will say that we don't
24   acknowledge that there's been a showing of relevance.  The
25   reason for that, your Honor, you asked a question a few minutes

1    ago, How do I address this?  The way the vast majority of
2    courts address this is by getting an infringement contention
3    where you map the element of the claim to the accused device.
4    I understand Mr. Scaglione to say in this case he looked for
5    that and didn't find it.  He asked for that and didn't get it.
6              Your Honor, you will remember we went back and forth
7    on infringement contentions, and ultimately what happened, what
8    came of that, we served an interrogatory and last month you
9    ordered IV to respond to it.  We got that response on Monday
10   night.
11             That response on Monday night with respect to his
12   product is identical, verbatim, it's the same as the
13   infringement contention you described as useless and a waste of
14   time.  It is the same.
15             So we would submit here what should have been shown
16   was a valid legitimate infringement contention where
17   Mr. Scaglione's client could look at claim 1 of the '409 patent
18   and see where each element of that claim is mapped against his
19   product.  That is the standard showing of relevance.  If they
20   had that, they would have put that in the record before you.
21   They couldn't.  They didn't.  To say that we agree it is
22   relevant is not accurate.  Our view is Mr. Scaglione --
23             THE COURT:  I am not relying on it.
24             MR. NAGY:  I understand, your Honor.
25             MR. SCAGLIONE:  Your Honor, we did attempt to do the

1   mapping, and we provided our mapping to Intellectual Ventures.
2   We have no response from any fact or expert witness from them
3   at all countering our point that we don't use encryption.  We
4   use passwords.  So we went through all the mapping.  We have no
5   response from them at all.  I do believe there is just no
6   showing of relevancy at all.
7            THE COURT:  Ms. Dyck?
8            MS. DYCK:  Your Honor, the infringement contentions
9   that JPMC received cited a document that ACI is seeking to
10  protect with this motion.  Therefore, when it came time to
11  write our opposition, I made the decision not to rely on that
12  document in showing why that document was relevant.  I thought
13  it would have been an improper thing to do.  We have not
14  updated our infringement contentions based on that document,
15  because, again, we understand this is an issue.
16           THE COURT:  How long should I wait for you and
17  Mr. Scaglione to come up with expert?
18           MS. DYCK:  I believe we should be able to come up with
19  an expert within a week.
20           THE COURT:  Within a week?
21           MS. DYCK:  Yes.
22           THE COURT:  Mr. Scaglione, do you share that view.
23           MR. SCAGLIONE:  It seems quite quick to me, your
24  Honor.
25           THE COURT:  What is a good time frame?

1    MR. SCAGLIONE:  I would say three weeks to secure an
2 engagement and define the scope of work, what material we are
3 going to give the expert and have that expert off and running.
4    THE COURT:  I don't want to have you spend a lot of
5 negotiating time.
6    MR. SCAGLIONE:  OK.
7    THE COURT:  How about by January 23?
8    MR. SCAGLIONE:  That is acceptable to ACI, your Honor.
9    THE COURT:  Can you get a joint report to me January
10 23?
11    MS. DYCK:  Yes, we can, your Honor.
12    THE COURT:  In that joint report give me the time
13 frame which the expert needs.  Let the expert define what he
14 needs.  You can perhaps get together and brief the expert
15 jointly.  I will appoint the expert.  So it is not an expert
16 for either side; it is a court-appointed expert.  You brief the
17 expert jointly, let the expert decide what he or she wants, and
18 we will define that expansively, and let me know how long the
19 expert needs on January 23.
20    MS. DYCK:  Your Honor, to clarify, what standard are
21 we using for relevancy?  Do you want a full infringement
22 mapping or the standard used by the Federal Rules of Civil
23 Procedure.
24    THE COURT:  There's no useful standard in the rules of
25 civil procedure when it comes to sensitive material like this.

1   Although the courts don't say there is any different standard
2   for relevance, I think the cases indicate that there is.  I
3   have discretion.
4            The more relevant, the less concerned I am about
5   prejudice.  The less relevant, the more arguments of prejudice
6   have sway.
7            Certainly, the expert is going to want to see the
8   allegations and the contentions.
9            MS. DYCK:  Your Honor, if these documents are not
10  produced allowing IV to understand how ACI products function
11  and operate as part of JPMC's payment processing system, IV is
12  going to be at a significant disadvantage during trial to show
13  how the processing system works.
14           THE COURT:  Make that case to the expert.
15           MS. DYCK:  We will.  Thank you, your Honor.
16           THE COURT:  Mr. Nagy, what is the effect on discovery?
17  And the time frame you have to work with?
18           MR. NAGY:  Your Honor, we have a deadline of the end
19  of March.  We produced since the last hearing over a thousand
20  documents.
21           THE COURT:  I am not interested in that.  The program
22  I have laid out --
23           MR. NAGY:  Yes.
24           THE COURT:  -- will it affect you.
25           MR. NAGY:  It should not affect the general scope of

1    discovery, your Honor.
2             THE COURT:  OK.  Thanks very much.  I will hear from
3    you on the 23rd by noon, and I will be back to you very quickly
4    after that.
5             MR. NAGY:  Your Honor, I have one housekeeping matter.
6    On Monday you heard a lot from my colleague Mr. Roberts.  He is
7    now down in the Federal Circuit on the interlocutory appeal.
8    They are arguing today.  He asked me this morning, I think he
9    is just thinking a lot about the argument, but as a technical
10   point, which is he referred at the hearing to an unpublished
11   decision called Cloud Satchel.
12            He thought he provided the Court with a copy, but he
13   didn't, and he asked me to provide a copy of that unpublished
14   decision just as a courtesy.  I have a copy here if I can hand
15   it up.
16            THE COURT:  Do you know the case?
17            MS. DYCK:  No objection.
18            THE COURT:  Thanks.  Just give me the case.  No
19   argument.
20            MR. NAGY:  Just the case, your Honor.
21            THE COURT:  Thank you.
22            MR. NAGY:  Thank you.
23            THE COURT:  Thanks very much.
24            MR. SCAGLIONE:  Thank you, your Honor.
25            MS. DYCK:  Thank you, your Honor.

1            THE COURT:  Safe travels back.
2            MR. SCAGLIONE:  Thank you.
3            (Adjourned)