UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                                              :    **ORDER AND OPINION**
INTELLECTUAL VENTURES II LLC,             :    **DENYING MOTION TO**
                                                                            :    **STRIKE INFRINGEMENT**
                              Plaintiff,     :    **CONTENTIONS AND FOR**
                                                                              :    **TERMINATING SANCTION**
      v.                                                            :
                                                            :
JP MORGAN CHASE & CO., et al.,                :   13 Civ. 3777 (AKH)
                                                           :
                                Defendants.     :
                                                             :
------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Intellectual Ventures II LLC ("Intellectual Ventures") sues JP Morgan Chase & Co. ("JPMC") for infringement of U.S. Patent No. 5,745,574 (the "'574 Patent"), which claims a process for validating public keys used for encryption of information sent over unsecured networks. This motion is the latest in a long, tedious series of discovery disputes. In this episode, JPMC moves to strike Intellectual Ventures' infringement contentions because they purportedly fail to adequately disclose Intellectual Ventures' theory of infringement. JPMC additionally seeks a terminating sanction dismissing Intellectual Ventures' claims alleging infringement of the '574 Patent. Intellectual Ventures counters that JPMC's tardy document production prevented it from providing more detailed infringement contentions. For the following reasons, JPMC's motion is denied.

**I.    Background**

    **A.    The '574 Patent**

        The '574 Patent claims a process and system for authenticating public keys used for the encryption and decryption of information sent over an unsecured network. In order to

send encrypted messages securely, parties use a system of public and private keys. For example, a sender will encrypt a message using a recipient's public key, which, as its name suggests, is publically available. The recipient then uses its corresponding private key to decrypt the message. However, a problem arises when a third party creates a fake public key that appears to belong to the recipient, but in actuality corresponds to the third party's private key. An unwitting sender may use the fake public key allowing the third party to intercept and decrypt the message using its own private key. The '574 Patent purports to solve this problem through a hierarchy, or public key infrastructure ("PKI"), of certification authorities, which vouch for the authenticity of a public key. Various certification authorities maintain databases of authenticated, or trusted, public key certificates. The system allows senders and recipients, each of which may use different immediate certification authorities, to have the public key verified by a shared certification authority within the PKI (known as the "common point of trust"). *See* '574 Patent at 11:66-12:43 (describing Figure 4).

Intellectual Ventures alleges that JPMC infringes Claims 18-24 and 26-31 of the '574 Patent. Independent Claims 18 and 23 are largely representative of the allegedly infringed claims. Claim 18 recites:

> In a certification system for secure communications containing computer processes arranged in a certification infrastructure, a method of requesting and issuing a public key certificate, comprising: (a) at a requesting computer process, generating a data structure containing the data items required for a public key certificate, including a public key, self-signing the data structure and sending the signed data structure as a certificate signature request to a computer process authorized as an issuing certification authority, and (b) at said computer process authorized as an issuing certification authority, verifying the authenticity of said request, and if authentic, certifying and returning the data structure in a certificate signature reply.

'574 Patent at 19:47-61. Independent Claim 23 further claims a method, within a "global network with secure communications," for "obtaining a public key certificate for every computer process in the infrastructure between the sender and a common point of trust in the infrastructure" and then "verifying the authenticity of signatures iteratively, beginning with the common point of trust." '574 Patent at 20:8-16.

### B. Procedural History

Following a *Markman* hearing held on March 5, 2014, JPMC requested at a March 16, 2014 status conference that the Court order Intellectual Ventures to file infringement contentions in order to clarify how Intellectual Ventures believed JPMC was infringing the '574 Patent. *See* Decl. Michael A. Feldman Supp. JPMC Mot. Strike ("Feldman Decl."), Exh. F at 113:7-14:7. Counsel for Intellectual Ventures expressed concern that, absent more extensive discovery, the contentions would be too broad and, therefore, not useful for narrowing discovery. *See id.*, Exh. F at 113:1-5. Nonetheless, when asked by the Court whether Intellectual Ventures knew how the accused products infringed the '574 Patent, counsel for Intellectual Ventures responded, "We do, your Honor." *Id.*, Exh. F at 113:20-114:7. Based upon that representation, the Court ordered that Intellectual Ventures "will, in good faith, identify each product or process of which Plaintiff is aware that infringes each identified claim. Plaintiff will identify each product or process by name if such name is known, or by a description of the technology alleged to infringe." Order Regarding March 24, 2014 Letter, No. 13 Civ. 3777, ECF No. 85 (S.D.N.Y. March 25, 2014). Intellectual Ventures filed its initial infringement contentions on April 11, 2014 ("First Set of Infringement Contentions"). *See* Feldman Decl., Exh. G.

The First Set of Infringement Contentions consisted of an 88-page chart listing the allegedly infringed claims in one column and explanations of JPMC's alleged infringement in a

3

second column. *See id.*, Exh. G. For example, in support of Intellectual Ventures' contention that JPMC infringed Claim 18(a) it writes: "As part of the certificate request process, JPMC generates at a requesting computer process, a data structure containing the data items required for a public key certificate, including a public key . . . . For example, JPMC obtains a public key certificate from [a third party vendor] by generating a data structure including a public key." *Id.* at 7-8. The explanation is followed by screenshots apparently from the third party vendor's policy describing a subscribers' use of the product. *See id.* at 9-10.

Unsatisfied with the First Set of Infringement Contentions, JPMC served an interrogatory ("Interrogatory # 1") on August 19, 2014, requesting that Intellectual Ventures "[i]dentify each accused instrumentality by patent and by asserted claim" and "[f]or each instrumentality, identify how each asserted claim is infringed." *See* Decl. Brent P. Ray Supp. JPMC Motion to Compel Plaintiff to Answer Interrogatory ("Ray Decl."), Exh. D at 5, No. 13 Civ. 3777, ECF No. 320 (S.D.N.Y. Dec. 8, 2014). On August 20, 2014, asserting that the First Set of Infringement Contentions failed to list all accused products, JPMC asked the Court to order Intellectual Ventures to revise it. *See* Feldman Decl., Exh. H at 16:13-15. In addition, JPMC asked the Court to order Intellectual Ventures to fully answer Interrogatory # 1. *See id.*, Exh. H at 16:19-22. Intellectual Ventures explained that it needed JPMC to fully produce relevant technical documents in order to clarify the infringement contentions and list all accused products. The Court ordered all technical documents to be produced and for Intellectual Ventures to serve a revised interrogatory response and revised set of infringement contentions by September 30, 2014. *See id.*, Exh. H at 16:13-15.

The Second Set of Infringement Contentions, served on September 30, 2014, expanded the number of accused products but largely retained the conclusory language and

discursive quality of the First Set of Infringement Contentions. *See id.*, Exh. I. On October 7, 2014, JPMC moved for an order compelling Intellectual Ventures to supplement its answer to Interrogatory # 1. *See* JPMC's Second Omnibus Mot. Compel, 13 Civ. 3777, ECF No. 204 (S.D.N.Y. Oct. 7, 2014). On October 14, 2014, JPMC moved to strike Intellectual Ventures' infringement contentions for allegedly adding new accused products. *See* Mot. Strike Pl's. Infringement Contentions, 13 Civ. 3777, ECF No. 231 (S.D.N.Y. Oct. 14, 2014). On November 4, 2014, the Court heard argument on the various discovery motions, at which time the parties represented that they had resolved their dispute with respect to Interrogatory # 1. However, the Court noted that the Second Set of Infringement Contentions were inadequate and warned that when fact discovery reached a sufficient point to command more specificity from Intellectual Ventures, the Court would require it. *See* Feldman Decl., Exh. B at 40:18-25. Following the argument, the Court denied JPMC's motion to strike the infringement contentions holding that "discovery with respect to IV's September 30, 2014 infringement contentions is appropriate at this time." Order Denying Defendants' Motion to Strike Plaintiffs' Infringement Contentions and Granting in Part and Denying in Part Plaintiffs' and Defendants' Motions to Compel, 13 Civ. 3777, ECF No. 296 (S.D.N.Y. Nov. 5, 2014).

On November 12, 2014, Intellectual Ventures supplemented its response to Interrogatory # 1 by listing each accused product and referring to their Second Set of Infringement Contentions for an explanation of how the products allegedly infringed the '574 Patent. *See* Ray Decl., Exh. F at 5-9. On December 8, 2014, JPMC again filed a motion to compel Intellectual Ventures to respond to Interrogatory # 1. *See* JPMC Mot. Compel Pl. Answer Interrogatory, No. 13 Civ. 3777, ECF No. 319 (S.D.N.Y. Dec. 8, 2014). JPMC argued that while Intellectual Ventures had identified each accused product, it had failed to explain *how*

5

each accused product infringed the '574 Patent. Upon reviewing Intellectual Ventures' response to Interrogatory # 1, the Court ordered Intellectual Ventures to revise the response by January 5, 2015 and warned that failure to do so would result in sanctions. *See* Feldman Decl., Exh. A at 7:15-8:2; Order Summarizing December 10, 2014 Status Conference, No. 13 Civ. 3777, ECF No. 328 (S.D.N.Y. Dec. 11, 2014).

On January 5, 2015, Intellectual Ventures produced another revised set of contentions (the "Third Set of Infringement Contentions"), which consisted of a single page stating that "[t]here are no new Exhibits" relating to the '574 Patent and reserving Intellectual Ventures' right to amend their infringement contentions upon completion of JPMC's document production. *See* Feldman Decl., Exh. J. Intellectual Ventures also produced a revised response to Interrogatory # 1 on January 5, 2015, which listed the allegedly infringed claims of the '574 Patent as well as eleven accused products alleged to have infringed the claims. *See id.*, Exh. K at 243. The interrogatory response contained numerous assertions that each product infringed each claim. *See id.* at 243-307. In support of these contentions, Intellectual Ventures stated that evidence "relating to each of these functionalities is available in Exhibit A to IV's 9-30-2014 Supplemental Infringement Contentions," the infringement contentions that the Court had previously ordered Intellectual Ventures to revise. *See id.* at 243.

On January 22, 2015, Intellectual Ventures served JPMC with yet another set of revised infringement contentions and a revised response to Interrogatory # 1 (the "Fourth Set of Infringement Contentions"). *See id.*, Exhs. L, M. The Fourth Set of Infringement Contentions was nearly identical to the Second Set of Infringement Contentions, which the Court previously characterized as inadequate, with the exception of several paragraphs added with respect to two accused products, copied and pasted repeatedly over the 273-page chart. *See id.*, Exh. N (redline

6

comparing Second and Fourth Set of Infringement Contentions). On February 20, 2015, Intellectual Ventures served a Fifth Set of Infringement Contentions, which included a claim chart and a revised response to Interrogatory # 1. *See id.*, Exhs. O-P. This set was identical to the Fourth Set of Infringement Contentions except for the deletion of a single accused product. *See id.*, Exh. U (redline comparing Fourth and Fifth Set of Infringement Contentions).

Throughout the time Intellectual Ventures served these various sets of infringement contentions, the parties were engaged in technical document discovery, which began via informal document requests on March 14, 2014. *See* Decl. Marc Belloli Opp'n Defs.' Mot. Strike ("Belloli Decl.") ¶ 3. After numerous extensions, disputes, and motions, this phase of discovery was scheduled to end March 31, 2015, and later extended to April 10, 2015. *See* Order Summarizing December 10, 2014 Status Conference, No. 13 Civ. 3777, ECF No. 328 (S.D.N.Y. Dec. 11, 2014); Order Extending Document Production Deadline, No. 13 Civ. 3777, ECF No. 371 (S.D.N.Y. Mar. 12, 2015). Intellectual Ventures contends, and JPMC does not dispute, *see* Decl. Tibor L. Nagy, Jr. Supp. Mot. Strike ("Nagy Decl.") ¶ 4, that of the approximately 832,000 pages of technical documents JPMC produced, more than 560,000 pages were produced between March 26, 2015 and May 7, 2015, over a month after Intellectual Ventures had served its Fifth Set of Infringement Contentions on February 20, 2015.[1] *See* Belloli Decl. ¶ 4. The production came after numerous requests in February 2015 by Intellectual Ventures for JPMC to remedy its deficient document production. *See id.* ¶ 10, Exhs. E, F, G.

On May 13, 2015, less than one week after belatedly completing its technical document production, JPMC filed the instant motion asking the Court to strike Intellectual

---

[1] Rather than deny that the majority of technical documents were produced after Intellectual Ventures served its Fifth Set of Infringement Contentions, JPMC argues that the documents produced were not necessary for Intellectual Ventures to serve more detailed contentions and many of the necessary documents were in the possession of third parties or publically available. *See* Reply Supp. Defs.' Mot. Strike Pls.' '574 Patent Interrogatory Response ("Reply Br.") at 10-11.

7

Ventures' infringement contentions and to dismiss the claims relating to the '574 Patent. Upon reviewing the 560,000 pages of documents produced by JPMC between March 26, 2015 and May 7, 2015, Intellectual Ventures once again revised its infringement contentions (the "Sixth Set of Infringement Contentions") and served them on JPMC along with their opposition to the instant motion. *See* Belloli Decl., Exhs. A-B. The Sixth Set of Infringement Contentions omitted five of the eleven accused products Intellectual Ventures previously included in its infringement contentions. *Compare* Feldman Decl., Exh. P at 226 *with* Feldman Decl., Exh. K at 243.

## II. Discussion

This dispute arises primarily from the parties' disagreement as to the degree of specificity to which the law requires infringement contentions to adhere. The Local Patent Rules of this Court require a patent plaintiff to serve on all parties:

> [A] Disclosure of Asserted Claims and Infringement Contentions, which identifies for each opposing party, each claim of each patent-in-suit that is allegedly infringed and each product or process of each opposing party of which the party claiming infringement is aware that allegedly infringes each identified claim.

Local Patent R. 6. Thus, the local rules require Intellectual Ventures to identify known accused products and the corresponding infringed claims. The Local Rules contemplate that the infringement contentions will be supplemented as discovery progresses pursuant to Fed. R. Civ. P. 26(e). *See* Local Patent R. 9 ("The duty to supplement in Fed. R. Civ. P. 26(e) shall apply to the Infringement Contentions . . . required by Local Patent Rule[] 6."). The Local Rules do not require by their language, prior to the completion of discovery, a detailed explanation of *how* each accused product infringes or the plaintiffs' precise theory of infringement.

8

By contrast, the rules applicable to cases designated for inclusion in the Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York include Patent Disclosure Rules 1-1(b) and 1-1(c), which mirror the Northern District of California's Local Patent Rules. *See, e.g.*, *Yama Capital LLC v. Canon Inc.*, No. 12 Civ. 7159, 2013 WL 6588589 (S.D.N.Y. Dec. 13, 2013). Patent Disclosure Rule 1-1(b) requires:

> Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process.

*Id.* at *2. Rule 1-1(c) further requires a litigant claiming infringement to provide:

> A chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

*Id.* at *3. The Patent Disclosure Rules require a plaintiff to "provide particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent rules themselves." *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 713 (E.D. Tex. 2008) (internal quotations omitted). JPMC relies heavily on cases that were designated for inclusion in the Pilot Project and to which the latter rules applied. *See, e.g.*, Mem. Law Supp. Defs.' Mot. Strike ("Opening Br.") at 7 (citing *Yama Capital LLC*, 2013 WL 6588589). However, this case is not part of the Southern District's Pilot Project. I am not a part of the Project, and I did not adopt, or follow, its rules. *See* Tr. of October 3, 2013 Status Conference at 2:3-6. This Court's Local Rules continue to

apply and, therefore, the more exacting standard applicable to Pilot Project cases does not apply. Indeed, the Court is doubtful of the utility of such detailed infringement contentions prior to discovery and the instant dispute only reinforces those doubts.

It is no doubt true that Intellectual Ventures' infringement contentions are discursive, disorganized, and, at times, confusing. Much "evidence" is simply cut-and-pasted screen shots from various manuals or websites shorn of context or plain English explanation. Some assertions cite manuals hundreds of pages long without providing a pincite. Moreover, the contentions are quite broad, a breadth that seemingly mirrors the breadth of the '574 Patent's claim language. Nonetheless, the infringement contentions do list the accused products and the claims that Intellectual Ventures alleges the products infringe, as required by Local Patent Rule 6. Furthermore, it is not possible, at this stage, to determine to what extent the deficiencies in the infringement contentions are caused by Intellectual Ventures' failure to conduct a pre-filing investigation or JPMC's failure to timely produce documents. Accordingly, the Court declines to strike the infringement contentions or grant a terminating sanction.[2]

Much of JPMC's motion is devoted to arguing that Intellectual Ventures has failed to present evidence sufficient to satisfy each element of its infringement claims. *See, e.g.*, Opening Br. at 10-15; Reply Br. at 14-21. The issue of whether Intellectual Ventures has raised sufficient facts to support its claims is more appropriately determined on a motion for summary judgment following the close of fact discovery.

---

[2] JPMC alternatively argues that the Court should stay further discovery concerning the '574 Patent until the PTO decides the pending *inter partes* review of the '574 Patent. As an initial matter, the Court declines to consider this argument because it was raised for the first time in JPMC's reply brief. Further, the Court declines to stay the proceedings pending administrative review for the reasons stated in the Order dated August 11, 2014. *See* Order Denying Motion to Stay Case Pending Patent and Trademark Office Review of Patents at Issue, No. 13 Civ. 3777, ECF No. 154 (S.D.N.Y. Aug. 11, 2014).

However, to avoid future delays caused by disputes over the adequacy of Intellectual Ventures' infringement contentions and to prevent future prejudice to either party,[3] the Court orders the following procedure. Document discovery is now closed. Intellectual Ventures has 30 days from the date of this Order to serve a final set of infringement contentions (the "Seventh Set of Infringement Contentions"), including a claim chart and response to Interrogatory # 1. No further revisions or supplemental submissions will be permitted. If JPMC believes that Intellectual Ventures has raised new claims in either the Sixth or Seventh Set of Infringement Contentions, both of which were served following the close of document discovery, and with respect to which JPMC did not have an opportunity to obtain discovery necessary to defend against such claims, it may make an application to strike those particular claims. However, document discovery will not be reopened and claim construction will not be revisited. The stay of discovery ordered at the May 21, 2015 status conference, *see* Order Summarizing May 21, 2015 Status Conference, No. 13 Civ. 3777, ECF No. 406 (S.D.N.Y. May 21, 2015), is hereby lifted. Fact discovery including, all depositions, shall be completed by September 15, 2015. JPMC may, at any point, file a motion for summary judgment based upon non-infringement if it maintains its position that Intellectual Ventures has failed to raise a triable issue of fact as to each element of its claims.

Finally, JPMC argues that Intellectual Ventures has already prejudiced it by making frivolous discovery requests related to accused products that are later abandoned. *See, e.g.*, Reply Br. at 13. There appears to be little doubt that Intellectual Ventures failed to

---

[3] JPMC argues that it has been prejudiced by Intellectual Ventures' repeated revision of its infringement contentions and that "if IV's contentions are not struck, this case must, essentially, go back to the beginning in that JPMC must amend its answer to add new defenses, seek additional documents from IV and from third parties, seek new claim construction from the Court, and file summary judgment motions." Reply Br. at 24.

11

conduct an adequately diligent pre-filing investigation as required by Fed. R. Civ. P. 11. Rule 11 provides that:

> by presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable oppurutnity for further investigation or discovery . . . ."

Fed. R. Civ. P. 11(b)(3). The Federal Circuit has held that "an attorney violates Rule 11(b)(3) when an objectively reasonable attorney would not believe, based on some actual evidence uncovered during the prefiling investigation, that each claim limitation reads on the accused device either literally or under the doctrine of equivalents." *Antonious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1074 (Fed. Cir. 2002).

Intellectual Ventures initially listed VeriSign's Symantec Authentication Services product in its Complaint, only to withdraw it after learning *post*-filing that VeriSign had a license to the '574 Patent. *See* Compl. ¶ 22; Feldman Decl., Exhs. C, D, E. Similarly, Intellectual Ventures listed eleven accused productions in its initial response to Interrogatory # 1. *See id.*, Exh. K at 243. However, following JPMC's completion of its document production on May 7, 2015 and Intellectual Ventures' review of those documents, Intellectual Ventures abruptly dropped five of those accused products when it served its Sixth Set of Infringement Contentions. *See* Belloli Decl., Exh. B. Intellectual Ventures' decision to drop these five accused products contradicts its assertion to the Court on March 6, 2014 that it knew how JPMC was infringing the '574 Patent, a representation upon which the Court relied in deciding to order early infringement contentions. *See* Feldman Decl., Exh. F at 113:20-14:10.

Intellectual Ventures has demonstrated a disturbing pattern of casting a wide net of claims and allegations, resulting in significant discovery costs and delays, only to withdraw

certain claims when it confirms what it should have learned prior to bringing the claims in the first place—that they lack any basis in fact. Further, counsel for Intellectual Ventures appears to have been less than forthright with the Court when explaining its purported factual basis for its infringement claims. This sort of gamesmanship and discovery abuse is precisely what Rule 11 seeks to prevent. Strict adherence to Rule 11 is particularly important in patent litigation, where discovery costs can be substantial. Because Intellectual Ventures listed accused products for which it likely had no "objectively reasonable" basis for believing infringed the '574 Patent, *Antonious*, 275 F.3d at 1074, and apparently represented the contrary position to the Court, a sanction in the amount of discovery costs incurred by JPMC related to the withdrawn accused products may be appropriate. In the interest of efficiency, however, the Court declines to impose such costs at this stage of the litigation. JPMC may file a comprehensive motion for such sanctions following the close of all discovery. Further gamesmanship on the part of Intellectual Ventures will not be tolerated.

### III. Conclusion

For the foregoing reasons, JPMC's motion is DENIED. The Clerk shall mark the motion (Doc. No. 395) terminated.

SO ORDERED.

Dated: New York, New York
June 22, 2015

ALVIN K. HELLERSTEIN
United States District Judge

13